759 F.2d 256
 24 Ed. Law Rep. 39
 Philip KAPLAN, Dennis Coleman, Hyman Cohen, Marjorie
Matthews, Francie Goldman, Ralph Giordano, "Jane Doe", on
behalf of themselves and all others similarly situated,
Elsie Mott, and the New York City School Boards Association,
Plaintiffs-Appellants,
v.
The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the
CITY OF NEW YORK; James F. Regan, individually and as
President of the Board of Education of the City School
District of the City of New York; Miguel O. Martinez,
individually and as Vice President of the Board of Education
of the City School District of the City of New York; Amelia
Ashe, Joseph G. Barkan, Stephen R. Franse, Irene
Impellizzeri, and Margorie A. Lewis, individually and as
members of the Board of Education of the City School
District of the City of New York; Nathan Quinones,
Chancellor of the City School District of the City of New
York; John R. Nolan, Secretary, Board of Education of the
City School District of the City of New York; Michael P.
Sofarelli, Inspector General of the Board of Education of
the City School District of the City of New York,
Defendants-Appellees.
 No. 637, Docket 84-7919.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 13, 1984.
Decided April 8, 1985.
 
 Michael A. Rebell, New York City (Roberta G. Koenigsberg, and Rebell & Krieger, New York City, on brief), for plaintiffs-appellants.
 Francis F. Caputo, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Beth G. Schwartz and Susan D. Wagner, New York City, on brief), for defendants-appellees.
 Before TIMBERS, CARDAMONE and ROSENN,* Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This is an appeal pursuant to 28 U.S.C. Sec. 1292 (1982) from an order entered in the Eastern District of New York denying appellants' motion for a preliminary injunction. The district court refused to grant appellants the relief requested on the ground that they had failed to demonstrate either probable success on the merits or the existence of a sufficiently serious question going to the merits to make it a fair ground for litigation. The district court also found that appellants had failed to show irreparable harm should the injunction not be granted.
 
 
 2
 For the reasons stated below, we affirm.
 
 I.
 
 3
 Appellants, members of certain local community school boards of New York City's decentralized school system,[1] commenced this action pursuant to 42 U.S.C. Sec. 1983 (1982) contending that recently adopted Regulation C-120 of the Chancellor of the New York City Board of Education (hereinafter "Board" or "Central Board") which requires the filing of financial disclosure forms by appellants and their spouses, is an unconstitutional invasion of privacy. The challenged regulation was adopted by the Board pursuant to the express statutory authority of New York Education Law Sec. 2590-g (McKinney 1981), which was amended by the legislature in 1975 to include provisions requiring the filing of disclosure of interest forms and financial disclosure forms by various school system personnel.[2] Appellants, and all other community school board members, routinely have filed disclosure of interest forms since 1976. Appellants have never challenged, and do not now challenge, this filing requirement. The Board, however, did not adopt procedures for the implementation of the financial disclosure requirement until 1984, following the much publicized investigation into the circumstances surrounding the resignation of former Chancellor Anthony Alvarado. Regulation C-120 will now require community school board members and their spouses to file the following information in addition to that called for on the disclosure of interest forms:(a) amount and source of all income of $1,000 or more with a description of the service performed;
 
 
 4
 (b) amount and source of all gifts and honoraria of $500 or more;
 
 
 5
 (c) amount and source of all capital gains and reimbursements for expenditures of $1,000 or more;
 
 
 6
 (d) investments in any securities and ownership of real property worth $20,000 or more; any indebtedness to any creditor in an amount of $5,000 or more for a period of at least 90 consecutive days, including the name of the creditor; and
 
 
 7
 (e) any beneficial interest in a trust or fiduciary relationship valued at $20,000 or more.
 
 
 8
 The forms are required to be filed with the Secretary of the Board and a duplicate copy sent to the files of the community school board itself. Penalties for failure to file the forms may include dismissal from office. In addition to adopting a regulation requiring the filing of such forms, the Board has enacted procedures designed to prevent the disclosure of highly personal information contained in the forms which is unrelated to the board members' performance of their duties. We shall discuss these procedures in more detail below as they relate to the instant appeal.
 
 
 9
 In their complaint, appellants alleged (1) that Regulation C-120 was an invasion of their right to privacy; (2) that the privacy protection procedures established by the Board were inadequate; and (3) that the Board had failed to justify these additional filing requirements as substantially related to the stated objective of deterring corruption among school system personnel. To avoid having to file these forms pending a determination of the merits of the action, appellants sought a preliminary injunction. From the district court's order denying this requested relief, the instant appeal has been taken.
 
 II.
 
 10
 Under the well settled law of this Circuit, to succeed on a motion for a preliminary injunction, the moving party has the burden of establishing: (a) irreparable harm; and (b) either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief. E.g., Sperry International Trade, Inc. v. Government of Israel, 670 F.2d 8, 11 (2 Cir.1982); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2 Cir.1979). Appellants having failed to satisfy either prong of this requirement, we hold that their motion for a preliminary injunction was properly denied.
 
 
 11
 (A)
 
 
 12
 On the issue of irreparable harm, appellants have asserted two types of injury that they claim will result in the absence of preliminary injunctive relief. First, they claim that, if the Board is not enjoined from requiring the filing of the financial disclosure forms, they and "numerous other community board members" will either resign or face dismissal rather than comply with the regulation. As a result, appellants argue that there will be chaos throughout the New York City school system, as well as "demonstrations and political confrontations". This argument fails in several respects. Initially it should be noted that appellants have not shown that they even speak for a majority of community school board members, or are in a position accurately to predict what course others may take if the injunction is denied. Furthermore, not only are these predictions of havoc and unrest too speculative to constitute a clear showing of immediate irreparable harm, Worthington Pump and Machinery Corp. v. Douds, 97 F.Supp. 656, 661 (S.D.N.Y.1951), but, as the district court held, it would be the acts of non-compliance and not the implementation of the regulation which would be the cause of any such chaos. We decline to permit appellants' threats of harm to the school system to serve as a predicate for granting a preliminary injunction.
 
 
 13
 Appellants' second claim of irreparable harm is based on their fear that forced disclosure will allow personal and confidential information to be released to the public and the press; and, further, that, in the case of school board members who are professionals, even the threat of disclosure will have an injurious effect on their relationships with clients and patients. While we are not insensitive to the valid concern of appellants that unwarranted intrusions into their private lives should be avoided, we are satisfied that the privacy protection procedures adopted by the Board will limit the public's inspection of material contained in the forms to only those items that directly relate to a member's performance of his or her duties. As summarized by the district court in its opinion, these privacy procedures provide
 
 
 14
 "that only the Secretary [of the Board of Education] and the Inspector General [of the Board of Education] will have access to the disclosure forms. Moreover, if a request is made for the release of disclosed information, notification is first given to the community school board member who is then permitted to request the confidentiality of any item. A determination to release information is appealable to the New York City Board [of] Ethics and then to the courts."
 
 
 15
 We recently have indicated our approval of a nearly identical privacy mechanism as it pertains to financial disclosure by employees of the New York City Police and Fire Departments. Barry v. City of New York, 712 F.2d 1554 (2 Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 548 (1984). We believe that such procedures are adequate to prevent wholesale invasion of the private lives of community school board members.
 
 
 16
 Appellants do not necessarily challenge the efficacy of these procedures as they relate to filings at the Central Board; rather, they contend that these procedures do not apply to the required duplicate community board filings. The Board has countered this argument by stating that the local boards are free to adopt any "common sense security measures" that they deem appropriate. Considering the vociferousness with which appellants have argued to protect their privacy rights, there is every reason to assume that adequate steps will be taken. The Board also has stated that, while duplicate filings are required, the local boards may designate the Central Board as the repository for these filings, thus bringing them under the privacy protection mechanism described above. Although appellants state that the legality of such a construction of the statute requiring duplicate filings is "far from clear", they do not actually challenge the accuracy of these assertions. Under the regulatory authority of New York Education Law Sec. 2590-g (McKinney 1981), it appears that the Central Board may adopt procedures to protect unwarranted intrusion into all filings. We rely on the Central Board's assurances that such procedures will effectively protect the duplicate filings. See Barry, supra, 712 F.2d at 1561-62. While appellants argue that they are entitled to a preliminary injunction since none of these procedures is yet in place, any failure by appellants to protect their own privacy must be ascribed to them, inasmuch as they have known since March of 1984 that the Board was going to activate the financial disclosure requirement.
 
 
 17
 We appreciate the fears of professionals who are concerned that the threat of disclosure will impede their dealings with clients and patients. Although counsel for the Board assured us at oral argument that professionals need not reveal the names of their clients or patients, but must merely state the aggregate amounts received from such business dealings, we need not decide this factual question at this stage of the proceedings. If the names of clients or patients need not be revealed, and the privacy protection procedures referred to above are applied, this combination should serve to allay the concerns of the patients or clients of Board member professionals and their spouses. We do suggest, however, that the Board evaluate in the light of actual operation of the regulations whether public explanation of the details of the procedures may be necessary further to allay the legitimate concerns of professionals, whether they serve on the local boards or are spouses of board members.(B)
 
 
 18
 Appellants have also failed to demonstrate either a likelihood of success on the merits, or the existence of a sufficiently serious question going to the merits to make it a fair ground for litigation. Our recent decision in Barry, supra, appears to be dispositive of the merits of the instant action. In Barry, employees of the New York City Police and Fire Departments challenged nearly identical financial disclosure requirements as an unconstitutional invasion of their right to privacy. While recognizing that the employees did have a protectable "interest in avoiding disclosure of personal matters", Nixon v. Administrator of General Services, 433 U.S. 425, 457 (1977); Whalen v. Roe, 429 U.S. 589, 599 (1977), we held that this interest was outweighed by the substantial, even compelling public interest reflected in the statute in deterring corruption and conflicts of interest:
 
 
 19
 "We think that the statute furthers a substantial, possibly even a compelling, state interest. The purpose of the statute is to deter corruption and conflicts of interest among City officers and employees, and to enhance public confidence in the integrity of its government."
 
 
 20
 712 F.2d at 1560 (citing Hunter v. City of New York, 58 A.D.2d 136, 137, 396 N.Y.S.2d 186, 187 (1st Dept.1977), aff'd, 44 N.Y.2d 708, 376 N.E.2d 928, 405 N.Y.S.2d 455 (1978)). We believe that the state interest is equally compelling in the instant case.
 
 
 21
 Appellants argue that our holding in Barry is not a per se rule and that the state's interest in deterring corruption should be weighed in the light of the specific facts of each case. They further argue that, since the Board appears to have been content for the past eight years with community board members filing only the disclosure of interest forms, the Board should bear the burden of establishing a substantial relationship between its objectives and the additional filing requirements. We reject this argument, as we rejected a similar one in Barry, supra, 712 F.2d at 1560. In 1975, the legislature, in the exercise of its judgment, enacted statutory provisions requiring all school system personnel to file forms for disclosure of interest and financial disclosure. Merely because the Board has seen fit over the past eight years to require only the disclosure of interest filings, we see no reason why the Board now should have to justify its intention to activate the second prong of its authorized powers, despite the corruption-free history of the community school boards. Barry, supra, 712 F.2d at 1561. The circumstances surrounding the resignation of former Chancellor Anthony Alvarado undoubtedly led the Board to believe that activation of the second filing requirement was necessary to dispel from the public's mind even the appearance of corruption among school system personnel. We cannot say that such belief was unreasonable.
 
 
 22
 Appellants attempt to distinguish themselves from the employees in Barry by asserting that, unlike Police and Fire Department personnel, community school board members are unsalaried elected officials. As to their status as elected officials, this factor, if anything, militates in favor of requiring board members to comply with even more stringent filing provisions than were applied to the employees in Barry. Unquestionably, the fact that appellants are elected officials does not strip them of all constitutional protection. Plante v. Gonzalez, 575 F.2d 1119, 1135 (5 Cir.1978) (citing Nixon, supra, 433 U.S. at 457). In matters of financial disclosure, however, as in other respects, they should expect even less privacy than their private counterparts. Plante, supra, 575 F.2d at 1135-36.
 
 
 23
 The fact that board members serve in a voluntary capacity strikes a more sympathetic chord. It is the unfortunate truth that the burden of complying with disclosure laws such as those here involved will inevitably deter some qualified persons from devoting their time and energy to public service. It is for the legislature, however, and not the courts, to decide whether to require such disclosure at the risk of losing some qualified persons.
 
 
 24
 Appellants' argument that Regulation C-120 is not substantially related to the legislative objective of deterring corruption is premised largely on their contention that the powers and duties of community school board members are limited to the extent that the disclosure of interest filing requirement, submitted to without objection by appellants and all other members for the last eight years, is sufficient to achieve the desired end of deterring and discovering corruption. We have rejected above the contention that the Board should have to justify the activation of a previously unused, but legislatively authorized, power. Moreover, our reading of New York Education Law Sec. 2590-e (McKinney 1981) reflects the legislature's view that community school board members do possess significant powers which could make them possible targets of corruption, as were the employees in Barry, supra. While board members do not possess unfettered discretion in a wide variety of areas, they can employee a superintendent, appoint and discharge all employees of the local board, manage and operate the schools under their jurisdiction, and authorize repairs to school buildings up to $250,000--all without first obtaining the approval of the Central Board. Local board members also exert considerable influence over matters such as the curriculum and the operation of cafeterias and social centers. Despite appellants' claims to the contrary, we believe that these powers give rise to sufficient opportunities for corruption so that financial disclosure by community school board members is substantially related to the goal of deterring such corruption. It is true that, unlike appellants here, the Barry employees' primary source of income was their "City" salary. We fail to see how this difference should affect the opportunities for corruption referred to above, or the legitimate legislative objective to deter and detect possible corruption as applied to appellants.
 
 
 25
 Since we have concluded that Chancellor's Regulation C-120, adopted pursuant to New York Education Law Sec. 2590-g, is substantially related to the important state interest in deterring and discovering corruption among community school board members, appellants' privacy claims, like those of the employees in Barry, supra, must yield to that interest. Since appellants have been unable to show irreparable harm and, under our decision in Barry, supra, they have not demonstrated a likelihood of success on the merits or the existence of a sufficiently serious question going to the merits to make it a fair ground for litigation, we hold that the district court did not err in denying appellants' motion for a preliminary injunction to enjoin the implementation of Regulation C-120.
 
 
 
 *
 Of the Third Circuit, by designation
 
 
 [1]
 In addition to the seven members of various local community school boards, appellants include the New York City School Boards Association, a corporation whose membership is alleged to consist of 29 of the 32 community school boards within the City, as well as one individual who is alleged to be a registered voter within the City
 
 
 [2]
 New York Education Law Sec. 2590-g states in relevant part:
 "...
 In addition the city board shall have the power and duty to:
 ....
 
 
 [13]
 a. Prescribe regulations and bylaws requiring members of the city board, the chancellor, and any other officer or employee in schools and programs under the jurisdiction of the city board and the chancellor, to make disclosure to the city board ... the following information:
 (1) any direct or indirect interest of the person reporting or his or her spouse in the furnishing of any supplies or materials, or in the doing of any work or labor, including the provision of professional services, or in the sale or leasing of any real estate, or in any proposal, agreement or contract for any of these purposes, in any case in which the price or consideration is to be paid, in whole or in part, directly or indirectly, out of any public or school moneys, or any employment, labor, compensation, direct or indirect interest, membership or relationship to any individual, firm, company, corporation, business, organization or association doing business with the city of New York or the city school district of the city of New York.
 (2) the source of any income, reimbursement, gift or other form of compensation for services rendered together with a description of such services arising out of interest disclosed pursuant to paragraph (1) above.
 b. Regulations and bylaws authorized herein shall apply with equal force and effect to community board members, community superintendents and all other officers and employees in schools and programs under the jurisdiction of the community boards."