952 F.2d 656
 Anthony BERTOLDI, as president of the New York State Court
Clerks Association, John F. Lyons, Francis J.
Carroll, Jr., and Michael Sexton,
Plaintiffs-Appellants,
v.
Sol WACHTLER, as Chief Judge of the State of New York and
Chief Judicial Officer of the Unified Court System of the
State of New York, Matthew T. Crosson, as Chief
Administrator of the Unified Court System for the State of
New York, New York State Ethics Commission for the Unified
Court System for the State of New York, David S. Gould,
David B. Filvaroff, Thomas E. Mercure, George Bundy Smith,
and Carol L. Ziegler, as members of the New York State
Ethics Commission for the Unified Court System for the State
of New York, and the State of New York, Defendants-Appellees.
 No. 171, Docket 91-7494.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1991.
Decided Dec. 30, 1991.
 
 Jonathan M. Landsman, New York City (Robert J. Bishop, Richard A. Lafont, Shea & Gould, New York City), for plaintiffs-appellants.
 Dennis J. Saffran, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Kenneth Falk, Michael Colodner, New York State Office of Court Admin., on the brief), for defendants-appellees.
 Before NEWMAN and PRATT, Circuit Judges, and POLLACK, District Judge.*
 PER CURIAM:
 
 
 1
 Once again we are asked, in the context of a financial disclosure requirement, to mediate between "the individual interest in avoiding disclosure of personal matters," Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), and "the benefits widely felt to be derived from openness and from an informed public." Slevin v. City of New York, 551 F.Supp. 917, 921 (S.D.N.Y.1982), aff'd in part and rev'd in part sub nom. Barry v. City of New York, 712 F.2d 1554 (2d Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983).
 
 
 2
 The plaintiffs, court clerks within New York's Unified Court System ("UCS"), mount this constitutional challenge to the financial disclosure requirement of New York's Ethics in Government Act, which is "probably its most elaborate" and "most bitterly-contested" provision. Robert C. Newman, New York's New Ethics Law: Turning the Tide on Corruption, 16 Hofstra L.Rev. 319, 332 (1988). Specifically, the plaintiffs (hereinafter "clerks") claim that their constitutional right to privacy has been, and continues to be, violated by the financial disclosure requirements. The clerks appeal from the May 16, 1991, judgment of the District Court for the Southern District of New York (John S. Martin, Jr., Judge) dismissing their complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a legally cognizable claim. We affirm.
 
 Background
 
 3
 In 1987, the State of New York enacted the Ethics in Government Act, which, among other things, created an extensive financial disclosure program effective January 1, 1989. 1987 N.Y.Laws ch. 813, § 26 (codified as N.Y.Pub.Off.Law § 73-a (McKinney 1988 & Supp.1991)). For legislative and executive branch employees, as well as for political candidates and political party officers, the statute itself prescribed the text of the financial disclosure form; for judicial employees, the statute directed the Chief Judge of New York to approve a "substantially similar" form to that set out in N.Y.Pub.Off.Law § 73-a(3). N.Y.Jud.Law § 211(4) (McKinney Supp.1991).
 
 
 4
 The form promulgated by the Chief Judge asks employees subject to the financial disclosure requirements to provide the same information mandated by N.Y.Pub.Off.Law § 73-a. Generally, each subject employee is required to disclose offices and directorships, business or professional positions held, interests in state or local government contracts, political party offices, gifts and reimbursements and their sources, trust interests, post-employment agreements, deferred compensation agreements, nature and sources of income, assignments of income, securities, real property, notes, accounts, and liabilities. All of this information must be disclosed not only for the employee, but for the employee's spouse and unemancipated children as well.
 
 
 5
 The values of economic holdings and liabilities need not be reported with precision; rather, broad categories have been established, and the employee need report only the category in which the holding or liability falls (e.g., A = under $5,000, and E = $100,000-$250,000). The value categories reported are to be kept confidential and are not for public inspection. See N.Y.Comp.Codes R. & Regs. tit. 22, § 40.1(p)(1)(i) (1991).
 
 
 6
 Financial disclosure for the UCS is required of two broad, overlapping categories of court employees: every judge, justice, judicial officer, and judicial employee who is paid "at or above the job rate of SG-24" (beginning April 1, 1990, this was $53,171 per year) and every judge, justice, judicial officer and judicial employee who holds a "policymaking position." N.Y.Comp.Codes R. & Regs. tit. 22, § 40.2. Whether an employee holds a "policy-making position" is determined by the Chief Judge, as to the personnel of the Court of Appeals; by the Presiding Justice of each appellate division, as to the personnel of those courts; and by the chief administrator of the courts, as to all other state-paid personnel of the UCS. Id., § 40.2(b)(1)-(3).
 
 
 7
 A UCS employee who is not a policymaker, but whose salary level triggers the financial disclosure requirement, may seek an exemption from the requirement of filing a financial disclosure statement. "This request will be granted if, in the discretion of the [Ethics] Commission, the public interest does not require disclosure and the employee's duties do not involve any of the duties set forth in § 40.1(i)(8) of the [Rules of the Chief Judge]." N.Y.St.Reg. § 7400.1(b) (Jan. 16, 1991); see also N.Y.Comp.Codes R. & Regs. tit. 22, § 40.1(i)(8).
 
 
 8
 The Ethics Commission for the UCS ("Commission") was created by the Chief Judge's rules. Id., § 40.1. It consists of five members (two of whom must be judges or justices within the UCS) appointed by the Chief Judge upon consultation with the Administrative Board of the Courts. Id., § 40.1(a), (b). The Commission, as well as its individual members in their official capacities, are named defendants in this action.
 
 
 9
 Under § 40.1(i)(8) of the Chief Judge's rules, which guides the Commission's discretion, an exemption may be granted to a person in a non-policy-making position
 
 
 10
 where, in the discretion of the commission, the public interest does not require disclosure and the applicant's duties do not involve the negotiation, authorization or approval of:
 
 
 11
 (i) contracts, leases, franchises, revocable consents, concessions, variances, special permits, or licenses as defined in section 73 of the Public Officers Law;
 
 
 12
 (ii) the purchase, sale, rental or lease of real property, goods or services, or a contract therefor;
 
 
 13
 (iii) the obtaining of grants of money or loans; or
 
 
 14
 (iv) the adoption or repeal of any rule or regulation having the force and effect of law[.]
 
 
 15
 Additionally, an employee may apply for and obtain an exemption for disclosure of information pertaining to the employee's spouse or children, if the Commission finds that the information has "no material bearing on the discharge of the reporting person's official duties." Id., § 40.1(i)(7); see also N.Y.St.Reg. § 7400.3(b). The same "material bearing" standard applies when an employee seeks to have one or more items individually deleted from the copy of the financial disclosure statement that is made available to the public. N.Y.Comp.Codes R. & Regs. tit. 22, § 40.1(i)(6); see also N.Y.St.Reg., § 7400.4(b).
 
 
 16
 To request an exemption either from filing, id. § 7400.1(c)(ii)(d), or from disclosing particular information, id., § 7400.3(c)(ii)(d), an employee--or an employee organization on behalf of persons who share a common job title--must include "specific reasons and justifications" for the exemption.
 
 
 17
 On March 29, 1991, the president of the New York State Clerks Association and three individual court clerks filed this action in the Southern District of New York, seeking to enjoin the application of the financial disclosure law, and for declaratory relief. Their nine-count complaint alleged that the mandated disclosure violates their right to privacy under both the New York and federal constitutions, their associational and organizational rights under the First Amendment, their free speech rights under the New York constitution, their due process rights (under both the New York and federal constitutions), and their "rights under the Ninth Amendment to the United States Constitution." The clerks also alleged that punishing them for failing to comply with the law, as well as disclosing the contents of the forms to the public, would contravene state law.
 
 
 18
 The case was assigned to Judge Martin, who on April 8, 1991, granted the clerks' request for limited discovery. When defendants, on April 11, 1991, informed Judge Martin that they believed a motion to dismiss on the pleadings was proper before any discovery was conducted, they were given until April 17, 1991, to make such a motion.
 
 
 19
 In moving for judgment under Fed.R.Civ.P. 12(b)(6) (and in the alternative under Fed.R.Civ.P. 56), the defendants attached the affidavit of Janice Howard, the executive director of the Commission. The Howard affidavit contained a chart of statistics, which showed that of 119 applications received from employee organizations for exemption of an entire job title, the Commission had granted 26. Additionally, the statistics showed that the Commission had granted 27 out of 209 requests for filing exemptions by individuals. In opposing defendant's motion, plaintiffs submitted an affidavit that included the exemption requests to the Commission on behalf of various categories of court clerks. These requests included descriptions of the duties of clerks within each category.
 
 
 20
 After hearing oral argument, Judge Martin, in an unpublished memorandum and order, granted defendants' motion to dismiss. He held that Igneri v. Moore, 898 F.2d 870 (2d Cir.1990), "and the precedent on which it relied are dispositive of the contentions of the plaintiffs here." Noting that the exemption procedures at issue in Igneri were "virtually identical" to the provisions at issue in the case at bar, Judge Martin went on to consider what he felt was the only distinguishing feature of the clerks' case--the allegation that the exemption procedures were, in reality, a "sham." Relying on the statistics contained in the Howard affidavit, he concluded that defendants had shown the clerks' "sham" allegations were baseless.
 
 
 21
 The clerks renew their arguments on appeal from the judgment of dismissal.
 
 Discussion
 
 22
 Preliminarily, we note that the case was decided in the District Court by the granting of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), even though matters outside the pleadings were before the Court, and at least some matters, the statistics of the granting and denial of exemption requests by the commission, were explicitly considered. Judge Martin concluded that the materials submitted by the plaintiffs were matters of public record that could be judicially noticed and for that reason could be considered on a motion to dismiss. See United States v. Wood, 925 F.2d 1580, 1582 (7th Cir.1991). Since both sides in this case submitted affidavits and since the defendants' motion alerted the plaintiffs to the risk that summary judgment was being sought, we prefer to treat the case as one appropriate for summary judgment, see Eklof Marine Corp. v. United States, 762 F.2d 200, 202 (2d Cir.1985).
 
 
 23
 Both sides agree that financial disclosure laws are to be tested under standards of intermediate scrutiny and that the state has the burden of showing that disclosure is designed to further a substantial governmental interest and "does not land very wide of any reasonable mark in making its classifications." See Igneri v. Moore, 898 F.2d 870, 873 (2d Cir.1990) (quoting Eisenbud v. Suffolk County, 841 F.2d 42, 46 (2d Cir.1988)).
 
 
 24
 Intermediate scrutiny cases in the Supreme Court (and cases using comparable variants of this standard) have used a variety of approaches in identifying the state interest sought to be advanced by the challenged requirement. In considering requirements imposed by statute, the Court has sometimes accepted the state interest identified by counsel for the state during the litigation, see Craig v. Boren, 429 U.S. 190, 199-200 & n. 7, 97 S.Ct. 451, 458 n. 7, 50 L.Ed.2d 397 (1976), or the interest identified by witnesses for the state during the litigation, see Frazier v. Heebe, 482 U.S. 641, 647, 107 S.Ct. 2607, 2612, 96 L.Ed.2d 557 (1987), or the interest identified by a state court reviewing the challenged requirement, see Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). On occasion, the Court has been willing to apply intermediate scrutiny to state interests that only might arguably be advanced by the challenged requirement. See Plyler v. Doe, 457 U.S. 202, 228-30, 102 S.Ct. 2382, 2400-01, 72 L.Ed.2d 786 (1982); Reed v. Reed, 404 U.S. at 77, 92 S.Ct. at 254. With a statute of obvious purpose, such as a statute of limitations adopted to defeat stale claims, the Court has not required any explicit identification of the state interest sought to be advanced. See Clark v. Jeter, 486 U.S. 456, 462, 108 S.Ct. 1910, 1915, 100 L.Ed.2d 465 (1988); Pickett v. Brown, 462 U.S. 1, 9, 103 S.Ct. 2199, 2204, 76 L.Ed.2d 372 (1983). Where the challenged requirement is contained in the decision of an administrative agency, the Court has found the state interest identified in the agency's own decision. See Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 568-69, 100 S.Ct. 2343, 2352-53, 65 L.Ed.2d 341 (1980).
 
 
 25
 In the pending case, the state interest sought to be advanced by a requirement of financial disclosure is as evident as is the interest sought to be advanced by a statute of limitations. It is the interest in reducing the risk of corruption and conflict of interest in the discharge of important public and quasi-public responsibilities in order to enhance public confidence in the integrity of government. We have repeatedly recognized that this is the state interest advanced by financial disclosure laws and have also recognized the substantiality of that interest. See Igneri v. Moore, 898 F.2d at 877; Eisenbud v. Suffolk County, 841 F.2d at 46; Kaplan v. Board of Education, 759 F.2d 256, 261 (2d Cir.1985); Barry v. City of New York, 712 F.2d 1554, 1560 (2d Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983).
 
 
 26
 What we have been obliged to examine in our prior consideration of challenges to financial disclosure requirements is whether the duties of the categories of employees subject to such requirements were of sufficient public responsibility and sensitivity so that disclosure furthers the substantial state interest of lessening the apprehended risks of corruption or conflict of interest. Though we could probably take judicial notice that court clerks have responsibilities that render them "vulnerable," Eisenbud, 841 F.2d at 46, to corruption and conflicts and that corruption and conflicts are "possible," Barry, 712 F.2d at 1563, in each of the categories of clerks within New York's Unified Court System, we need not rely on judicial notice. In opposition to the defendants' motion for summary judgment, the plaintiffs submitted their own affidavit, enclosing their requests for exemption from the disclosure requirements for each of the categories of clerks within the Unified Court System. Those requests included descriptions of the duties of each category of clerk. The duties, as we would have anticipated, include handling of confidential court documents and dealings with lawyers and law enforcement agencies on a variety of court-related matters. The duties are unquestionably of a nature that financial disclosure furthers the substantial state interest in lessening the risk of corruption and conflict of interest. The District Court was entirely correct in rejecting the constitutional challenge to the disclosure requirements as applied to each of the categories of court clerks. The information required to be disclosed is not materially different from that required by the form upheld in Igneri.
 
 
 27
 The Court was also justified in rejecting the claim that the exemption procedure is constitutionally defective--in the conclusory language of the complaint, a "sham." To the extent that the plaintiffs have invoked the exemption procedure by seeking exemption for each category of clerks, those requests were validly denied because of the duties of the personnel in each of the categories. To the extent that the plaintiffs apprehend unconstitutional denial of any particularized exemptions they might seek in the future, either to exempt an individual employee whose duties are not typical of the employee's category or to protect the confidentiality of a specific item of information, their claim is entirely premature. The defendants' affidavit concerning exemption grants and denials adequately demonstrates that a mechanism is in place and capable of functioning to accord individualized consideration to privacy concerns. These plaintiffs have yet to make an individualized request for exemption, and we need not anticipate how the Commission would apply the exemption standards to such requests nor determine whether its application of exemption standards would pass constitutional muster.
 
 
 28
 The District Court properly rejected all of the federal claims. With the federal claims failing at the outset, any state claims are matters for the state courts.
 
 
 29
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Milton Pollack of the District Court for the Southern District of New York, sitting by designation