Lawrence **LEIBOWITZ** and Joseph Rondina, Plaintiffs,

v.

SMITH BARNEY INC., First Albany Corporation, Alan F. Coates, and "John Doe" as personal representative of the Estate of Frederick Purtell, deceased, Defendants.

No. 94 Civ. 6748 DC.

United States District Court, S.D. New York.

Sept. 23, 1994.

172

Edward F. Westfield, Stults & Balber, P.C., New York City, for plaintiffs.

Harry T. Walters, Associate Gen. Counsel, Smith Barney Inc., New York City, for defendant Smith Barney, Inc.

Brian F. Mumford, Harvey and Harvey, Harvey & Mumford, Albany, NY, for defendant First Albany Corp.

## MEMORANDUM DECISION AND ORDER

CHIN, District Judge.

This is a motion by plaintiffs Lawrence Leibowitz and Joseph Rondina for a temporary restraining order and preliminary injunction staying an arbitration pending before the National Association of Securities Dealers (the "NASD"). For the reasons set forth below, the motion is denied.

*FACTS*[1]

This case arises from a series of investments made by plaintiffs on the advice of Frederick Purtell, an investment advisor and securities broker formerly employed by Shearson Lehman Brothers, Inc. ("Shearson," the predecessor to defendant Smith Barney Inc.) and defendant First Albany Corporation ("First Albany"). From November 1985 to August 1991, plaintiffs invested more than $2.5 million with Shearson and First Albany through Purtell. As a result of these investments, plaintiffs sustained substantial losses.

In November 1992, plaintiffs commenced an NASD arbitration against Purtell,[2] First Albany and Shearson for fraud and securities laws violations. Plaintiffs filed a *pro se* Joint Statement of Claim with the NASD at that time, and they also signed Uniform Submission Agreements by which they agreed to submit their claims to the NASD for arbitration. Plaintiffs' decision to submit their dispute to arbitration was based on the erroneous advice of a bond broker and an attorney that arbitration was their only recourse. Neither the broker nor the attorney was in any way affiliated with defendants.

In or shortly before May 1993, plaintiffs retained counsel to represent them in the arbitration proceedings. Plaintiffs' new counsel filed an Amended Joint Statement of Claim on plaintiffs' behalf on May 15, 1993.

It is undisputed that plaintiffs participated in the arbitration proceedings by: 1) taking part in the NASD's arbitrator selection process, 2) engaging in discovery pursuant to rules set by the NASD, 3) attending a prehearing discovery conference with one of the arbitrators, and 4) opposing a motion to sev-

1. For purposes of this motion, the Court has assumed that the facts set forth in plaintiffs' affidavits are true.

2. Purtell died in April 1994. His estate has been named as a defendant in this case, but no appearance has been made on its behalf. Nor has any appearance been made on behalf of defendant Alan F. Coates, who is alleged in the complaint to have been the manager of First Albany's Syracuse branch.

er certain claims. Plaintiffs also requested and received adjournments of the arbitration hearing, and the hearing was finally scheduled to commence on September 21, 1994. Although the hearing was scheduled for only two days, the parties agree that the hearing will require more than two days to complete.

In early September 1994, when preparing for the arbitration hearing, plaintiffs realized that certain client agreements between plaintiffs and defendants were forged. These agreements, which contained arbitration clauses, had been produced by the defendants during discovery in the fall of 1993. Plaintiffs contend that the client agreements are null and void because of the forgeries.

On September 16, 1994, three business days before the arbitration hearing was to commence, some 22 months after plaintiffs submitted their dispute to arbitration, and some 16 months after counsel appeared in the arbitration proceedings on plaintiffs' behalf, plaintiffs brought on by order to show cause the present motion for a temporary restraining order and preliminary injunction to enjoin defendants from proceeding with the arbitration. Plaintiffs contend that their submission to arbitration was based on erroneous advice, that defendants should have realized that the client agreements were forgeries, and that defendants should have promptly apprised plaintiffs of their right to pursue their claims in court rather than through arbitration.

*DISCUSSION*

A party seeking a temporary restraining order or preliminary injunction must show: 1) irreparable harm and 2) either (a) the likelihood of success on the merits or (b) the existence of sufficiently serious questions on the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant. *Local 1814, International Longshoremen's Assoc., AFL–CIO v. New York Shipping Assoc., Inc.,* 965 F.2d 1224, 1228 (2d Cir.1992); *McNeilab, Inc. v. American Home Products Corp.,* 848 F.2d 34, 37 (2d Cir.1988). Both remedies are extraordinary ones that will be granted only upon a showing that the alleged threat of irreparable harm is not remote or speculative, but actual and imminent. *See Kaplan v.*

*Board of Education of City School District of the City of New York,* 759 F.2d 256, 259 (2d Cir.1985); *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977); *Marisa Christina, Inc. v. Bernard Chaus, Inc.,* 808 F.Supp. 356, 360 (S.D.N.Y.1992).

### A. *Irreparable Harm*

Plaintiffs have failed to show that they would suffer irreparable harm if this Court denies their motion for a temporary restraining order and preliminary injunction. Plaintiffs' only assertion of irreparable harm is their statement that "the arbitration proceeding *may* result in collateral estoppel and/or issue preclusion against them, in a forum where their substantive rights are limited." (Pl.Mem. at 5) (emphasis added). The mere possibility that plaintiffs *may* be precluded from raising issues in a subsequent lawsuit, however, is simply too speculative and remote to justify the imposition of a preliminary injunction. *See Kaplan v. Board of Education,* 759 F.2d at 259; *see also In re Montauk Oil Transportation Corp.,* 859 F.Supp. 669 (S.D.N.Y.1994) (determination of collateral estoppel effect of arbitration on subsequent court proceeding can only be made once the arbitration is complete since such a determination requires analysis of the arbitration proceeding). Indeed, plaintiffs have failed to cite any authority for the proposition that the possible preclusive effect of an arbitration proceeding is sufficient irreparable harm to warrant an injunction.

Plaintiffs also argue that they will be irreparably harmed if the arbitration proceeding is not stayed because punitive damages cannot be awarded in an arbitration. This argument, however, ignores the fact that plaintiffs have asked for punitive damages in their Amended Statement of Claim. Moreover, punitive damages may be awarded in arbitration proceedings in certain circumstances. *See Kerr–McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 470 (2d Cir.), *cert. denied sub nom.* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991) (affirming arbitration panel's award of treble damages for violation of RICO); *Schneider v. Schonfeld Securities, Inc.,* 1993 WL 37500, *1 (S.D.N.Y. Feb. 5, 1993) (affirming arbitration

award of punitive damages by an arbitration panel of the NASD); *but see Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 122 (2d Cir.1991) (reversing award of punitive damages where arbitration agreement specified New York law, which does not allow punitive damages in arbitration). The Uniform Submission Agreements signed by plaintiffs do not contain a choice of law clause, and plaintiffs have asserted federal securities laws claims in their Amended Statement of Claim. Hence, it is unclear whether plaintiffs will be precluded from seeking punitive damages in the arbitration proceedings.[3] Moreover, even assuming that plaintiffs may not recover punitive damages in the arbitration proceeding, the argument still must fail, for the fact that a party may not be able to recover all of its damages in an arbitration does not invalidate an arbitration agreement, even when the agreement was entered without knowledge of such a limitation. *Rosen v. Waldman,* 1993 WL 403974, *3 (S.D.N.Y. Oct. 7, 1993) (arbitration agreement was not invalidated although punitive damages were not available), *citing Pierson v. Dean, Witter, Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984); *see also In re Drexel Burnham Lambert Group,* 161 B.R. 902 (S.D.N.Y.1993) (same).

Finally, even assuming an arbitration award could result in issue preclusion here, the alleged irreparable harm is neither "actual" nor "imminent." As counsel for plaintiffs conceded at oral argument, the issue of the voluntariness of plaintiffs' submission to arbitration has not yet been raised with the arbitration panel. Plaintiffs can present to the arbitration panel the same arguments they have made to this Court.

### B. *The Merits*

■ Likewise, plaintiffs have failed to show either a likelihood of success on the merits or the existence of sufficiently serious questions on the merits to make them fair ground for litigation. Plaintiffs have not shown that they are likely to succeed in

having their submission to arbitrate set aside. Even assuming plaintiffs were misled into believing that arbitration was their only recourse, their mistaken belief was due to the erroneous advice they received from individuals who had no connection to defendants. The record plainly shows, and plaintiffs essentially concede, that the defendants did nothing to induce plaintiffs to submit their dispute to the NASD. Even assuming plaintiffs acted on the basis of a mistaken belief that they had no choice but to arbitrate, their unilateral mistake in submitting their dispute to arbitration cannot serve as the basis for rescinding their agreement to arbitrate. *See Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769, 795 (S.D.N.Y.1993) (rescission of contract based on unilateral mistake requires a showing that the other party knew or should have known that the mistake was being made).

Plaintiffs argue that the defendant brokerage firms had no agreement to arbitrate with plaintiffs because the client agreements, which contained arbitration clauses, were forged. They argue that the forgeries should have put the defendants on notice that plaintiffs were mistaken in submitting to arbitration. Even assuming that the client agreements are forgeries, this argument fails for two reasons. First, plaintiffs did not rely on the client agreements when they submitted to arbitration before the NASD in November 1992; indeed, they did not know that the agreements existed until the fall of 1993. Their decision to submit to arbitration was not based on the customer agreements. Hence, the fact that the customer agreements contained forged signatures is irrelevant to the issue of whether they submitted to arbitration voluntarily.

Second, defendants had no duty to second-guess plaintiffs' decision to arbitrate; they had no way of knowing whether plaintiffs chose arbitration because they believed arbitration would be quicker and less expensive than going to court or whether plaintiffs did so because they believed they had no choice.

---

**3.** In their complaint in this action, plaintiffs have asserted a RICO claim, which was not contained in their Amended Statement of Claim filed with the NASD. The absence of a RICO claim in the arbitration, however, cannot form the basis for finding irreparable harm at this point, for presumably plaintiffs can seek to further amend

their Statement of Claim in the arbitration proceedings to include a RICO claim. *See Kerr-McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 471 (2d Cir.1991) (appeals court, in affirming arbitration award of treble damages for violation of RICO, noted that "there is no longer any doubt that a RICO claim is arbitrable").

Plaintiffs' suggestion that brokerage firms have a duty to investigate whether customers who file arbitration claims against them have done so knowingly and voluntarily or because they mistakenly believed that they had no choice makes no sense. *See Rosen v. Waldman*, 1993 WL 403974, *3 (S.D.N.Y. Oct. 7, 1993) (failure of a stockbroker to disclose or explain arbitration clause to a client does not constitute fraud since stockbrokers do not owe a duty to disclose or explain). Plaintiffs' assertions that defendants should have realized that the customer agreements were forgeries and that defendants should have advised them of that fact must also be rejected, for the customer agreements were produced to plaintiffs in the fall of 1993. Certainly, plaintiffs were in a better position than defendants to determine whether the signatures on the customer agreements were forgeries. Yet, plaintiffs themselves did not uncover the forgeries until just this month.

### C. *Balance of Hardships*

■ Finally, the balancing of the hardships does not tip decidedly in favor of plaintiffs. Not only did plaintiffs initiate the arbitration proceedings, they then participated in the arbitration proceedings for 22 months, including some 16 months after they retained their current attorneys. Moreover, plaintiffs have not suggested that will not receive a fair hearing from the NASD, and the purported irreparable harm is speculative at best. On the other hand, defendants have participated in the arbitration proceedings for nearly two years, and they are ready and prepared to proceed with the arbitration hearing, which has been adjourned or rescheduled three times. They should not have to wait again simply because plaintiffs have now decided that they would prefer to litigate rather than arbitrate.

### CONCLUSION

Plaintiffs' motion for a temporary restraining order and preliminary injunction is denied.

SO ORDERED.