841 F.2d 42
 Frederick EISENBUD, Susan Braitman, Robert Garfinkle, Steven
Hovani, Robert Margolin, Michael Miller, Leonard
Pilzer, John Ribeiro, Ira Simon,
Theodore Sklar, and Mary
Werner, Plaintiffs-Appellants,
v.
SUFFOLK COUNTY and Suffolk County Board of Public
Disclosure, Defendants- Appellees.
 No. 525, Docket 87-7653.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 14, 1987.
Decided March 8, 1988.
 
 Frederick Eisenbud, Hauppauge, N.Y., for plaintiffs-appellants.
 Anton J. Borovina, Mineola, N.Y. (D'Amato, Forchelli, Libert, Schwartz, Mineo & Joseph F. Carlino, Mineola, N.Y., on the brief), for defendants-appellees.
 Before MESKILL, KEARSE, and MAHONEY, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiffs Frederick Eisenbud, et al., attorneys employed by defendant Suffolk County, New York (the "County"), appeal from a final judgment of the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, dismissing their complaint brought under 42 U.S.C. Sec. 1983 (1982) for a declaratory judgment that the County's financial disclosure law, Suffolk County Code ch. 61, as amended through 1986, violated their rights under the Equal Protection Clause of the Constitution. The court found that the disclosure law did not violate plaintiffs' rights to equal protection because it is rationally related to a legitimate government purpose. On appeal, plaintiffs contend that the court's use of the rational-basis test was inappropriate and that even under that test their claim should have been upheld. For the reasons below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 The material facts are not in dispute. The law at issue requires County "employees" to file financial disclosure statements revealing, inter alia, the assets, liabilities, and sources of income of themselves and their spouses. As amended in mid-1986, the term "employee" was defined, in pertinent part, to mean
 
 
 3
 all elected Suffolk County officials, all department heads, chief deputy department heads, all personnel who are in the competitive jurisdictional class, but who have not received permanent competitive status in Suffolk County, or who are in the non-competitive, exempt, unclassified jurisdictional classes and who are graded 16 and above or are ungraded and receiving $25,000.00 or more in annual compensation....
 
 
 4
 Local Law No. 9-1986, Sec. 2, codified at Suffolk County Code Sec. 61-4 (1986). The effect of this definition was to make the disclosure requirements applicable to appointed County employees who earn $25,000 or more and are exempt from civil service requirements, and inapplicable to employees who, through competitive examination, have received permanent status covered by civil service. A later amendment in 1986 retained the quoted part of the definition, but excepted from it 27 categories of employees who are exempt from civil service requirements but who, in terms of potential conflicts of interest, are deemed not to hold "sensitive" positions. These categories include, e.g., registered nurses, tree trimmers, and tug boat captains.
 
 
 5
 Plaintiffs are employed by the County as assistant county attorneys or assistant district attorneys. They are exempt from civil service and are paid $25,000 or more per year, and hence are required to file financial disclosure statements. They commenced the present action in November 1986, alleging principally (1) that the disclosure law deprived them of their rights to privacy without due process of law, and (2) that because employees covered by civil service were not similarly required to file disclosure statements, the law deprived plaintiffs of equal protection. Both sides moved for summary judgment.
 
 
 6
 Prior to a ruling on these motions, plaintiffs wrote the court withdrawing their due process privacy claims because defendant Suffolk County Disclosure Board ("Disclosure Board"), an entity created by the financial disclosure law, had amended its rules to grant substantially all of the due process safeguards sought in this suit. Plaintiffs continued to contend that because the disclosure law was not applicable to "large numbers of other employees occupying similarly 'sensitive positions' or earning equal or greater salaries" (Complaint p 21), the law was invalid in its entirety on equal protection grounds.
 
 
 7
 In a Memorandum of Decision and Order dated June 29, 1987 ("Opinion"), the district court granted defendants' motion for summary judgment dismissing the complaint. The court rejected plaintiffs' contention that this Court's decision in Barry v. City of New York, 712 F.2d 1554 (2d Cir.) ("Barry "), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983), which involved a similar financial disclosure law, required use of an intermediate standard of scrutiny, stating that though the intermediate standard had been applied to the Barry plaintiffs' claims of privacy, it did not appear to have been applied to their equal protection claims. Rather, the district court concluded that because the Eisenbud " 'plaintiffs' equal protection claims d[id] not involve invidious discrimination, suspect classifications, or fundamental rights,' " Opinion at 9 (quoting Duplantier v. United States, 606 F.2d 654, 671 n. 37 (5th Cir.1979), cert. denied, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981)), the law should be upheld if it had a rational basis. The objectives of the law, as stated by the County legislature in the law itself, included ensuring to citizens of the County "a county government that is administered free from any conflicts of interest by employees who affect the integrity of the county government," Suffolk County Code Sec. 61-2.A., "discourag[ing] and detect[ing] corruption and the appearance of corruption," id. Sec. 61-2.D, and "instill[ing] in the public a sense of confidence and integrity and impartiality of its public servants," id. Sec. 61-2.E. The district court found that these were legitimate governmental purposes and that the County legislature could rationally have concluded that the need for disclosure was greater with respect to appointed exempt employees than with respect to those who had achieved permanent civil service status through competitive examination. Accordingly, the court concluded that the disclosure law did not violate plaintiffs' equal protection rights.
 
 
 8
 Judgment was entered dismissing the complaint. This appeal followed.
 
 II. DISCUSSION
 
 9
 On appeal, plaintiffs argue that their right to privacy is a substantial right protected by the Constitution and that (1) under Barry, the district court should have applied an intermediate standard of review, upholding the statute only if there was a substantial relationship between its purpose and its discriminatory effect, and (2) even under the rational-basis standard employed by the district court, the law should have been held to violate their rights to equal protection. We agree that Barry used an intermediate standard of review, but we conclude that under that standard the County's disclosure law must be upheld.
 
 
 10
 It is well established that social and economic legislation that does not discriminate on the basis of inherently suspect classifications or implicate "fundamental" personal rights does not violate equal protection rights if it has any rational relationship to a legitimate governmental purpose. See, e.g., Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). At the other end of the scale, legislation that either disadvantages a "suspect" class or impinges on the exercise of a fundamental personal right has traditionally been subject to strict scrutiny to determine whether it is "precisely tailored to serve a compelling governmental interest." Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).
 
 
 11
 Between these two extremes, the Court has applied intermediate levels of scrutiny in cases where the classification is not facially invidious and the right impinged is important though not protected by the Constitution. Various formulations have been used to describe the intermediate levels used. See generally City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440-42, 105 S.Ct. 3249, 3254-56, 87 L.Ed.2d 313 (1985); id. at 451, 105 S.Ct. at 3260 (Stevens, J., concurring) ("our cases reflect a continuum of judgmental responses to differing classifications"); id. at 456, 458, 105 S.Ct. at 3263-64 (Marshall, J., concurring in the judgment in part and dissenting in part) (method employed by majority in invalidating housing discrimination on basis of mental retardation, though not labeled "heightened scrutiny," should be called " 'second order' rational-basis review"). Other formulations for intermediate levels of review include inquiring whether the statute furthers a "substantial" governmental interest, e.g., Plyler v. Doe, 457 U.S. at 224, 102 S.Ct. at 2398; whether the law is "substantially related" to an "important" governmental interest, e.g., Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976); and whether the law is "substantially related" to a "legitimate" governmental interest, Mills v. Habluetzel, 456 U.S. 91, 99, 102 S.Ct. 1549, 1554, 71 L.Ed.2d 770 (1982).
 
 
 12
 With regard to the right of privacy, the Supreme Court has had before it several appeals from state-court decisions upholding financial disclosure laws. It has, as discussed in Barry, 712 F.2d at 1558, dismissed those appeals for want of a substantial federal question, which constituted dispositions on the merits of those appeals. Subsequent to those dispositions, the Court has noted that the right of privacy encompasses not only "the interest in independence in making certain kinds of important decisions," but also "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (footnotes omitted). The Court has never, however, discussed what degree of protection should be accorded an individual's interest in avoiding disclosure of financial information.
 
 
 13
 Our Circuit's answer to this question was given in Barry, which involved a New York City ("City") financial disclosure law similar to the one at issue here. We concluded that laws impinging on the plaintiffs' interests in nondisclosure should be subjected to an intermediate standard of review. 712 F.2d at 1559. We ruled that the law would not violate the plaintiffs' privacy interests if it sought to vindicate "a substantial government purpose," id. at 1560, and, in light of such a purpose, would not violate the plaintiffs' equal protection rights if it was so tailored as not to be " 'very wide of any reasonable mark,' " id. at 1564 (quoting Buckley v. Valeo, 424 U.S. 1, 83 n. 111, 96 S.Ct. 612, 665 n. 111, 46 L.Ed.2d 659 (1976) (per curiam)).
 
 
 14
 The district court in the present case took the view that because (a) Barry's discussion of the "substantial" purpose served by the City's financial disclosure law appeared in the portion of the opinion that explored the plaintiffs' rights of privacy, and (b) the equal protection discussion cited to Buckley v. Valeo, which had used a rational-basis type of scrutiny with respect to a First Amendment claim, Barry did not apply more than the rational-basis test--i.e., rational relationship to a legitimate governmental interest--to the claim that the City law violated the plaintiffs' rights to equal protection. We disagree. In general, if a law alleged to infringe a certain right directly requires a heightened degree of scrutiny, heightened scrutiny should also be given when the law is alleged to infringe that right discriminatorily. See Police Department v. Mosley, 408 U.S. 92, 96, 101-02, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212 (1972). Our treatment in Barry was consistent with this principle. Having discussed the substantial governmental interest in assessing the privacy claim, we did not mention any lesser test of appropriate government interest in assessing the equal protection claim. Indeed, our reference, in discussing the equal protection claim, to "the magnitude of the City's interest," 712 F.2d at 1563, belies the notion that we were using a mere "legitimate" governmental interest test.
 
 
 15
 In sum, Barry established an intermediate level of review to be given to financial disclosure laws, ruling that the law should be upheld if it is designed to further a substantial governmental interest and does not land very wide of any reasonable mark in making its classifications. The district court should have applied this standard in assessing the claims in the present case.
 
 
 16
 Application of the Barry standard does not, however, require invalidation of the financial disclosure law at issue here. The Barry panel described the purpose of the City statute as seeking "to deter corruption and conflicts of interest among City officers and employees, and to enhance public confidence in the integrity of [City] government, [and to gain] 'the benefits widely felt to be derived from openness and from an informed public.' " 712 F.2d at 1560 (quoting opinion of the district court therein, Slevin v. City of New York, 551 F.Supp. 917, 921 (S.D.N.Y.1982)). It found that "the statute as a whole plainly further[ed] a substantial, possibly even a compelling, state interest." 712 F.2d at 1560. The purpose of the County law in the present case, quoted to an extent in Part I above, is thus identical to that of the City in Barry, and we cannot conclude that it is any less substantial.
 
 
 17
 Nor can it be concluded that the County's classifications are far wide of any reasonable mark. In Barry, the law applied to all City employees earning $30,000 or more. Though we noted that this classification was both somewhat overinclusive and somewhat underinclusive, and that the law "would be better if it specified the 'particular job categories' that should be subject to disclosure," we did not find the law invalid on this ground because "there [we]re too many positions involved to permit classification by particular job categories" and because "the burden imposed by an imprecise classification ... [wa]s mitigated by the statute's privacy mechanism, which permit[ted] covered employees to challenge the proposed release of irrelevant 'highly personal' information." 712 F.2d at 1564.
 
 
 18
 The County's financial disclosure law is plainly no more suspect than that of the City. Indeed, the County has made demonstrable efforts to "narrowly target and focus the obligation of financial disclosure upon individuals who are most vulnerable to financial conflicts and pressures," see Local Law No. 20-1986, Sec. 1, amending the disclosure law to make it inapplicable to more than two dozen specific categories of employees whose jobs were not felt to be particularly "sensitive" to such conflicts and pressures. Perhaps the County would be able to draw additional lines to exclude some employees now required to make disclosure or to bring in some civil service employees now exempted. But we agree with the district court that it was not unreasonable for the County legislature to conclude that, in general, permanent civil servants who gain their positions through competitive examination are less vulnerable to such conflicts and pressures than are attorneys employed by the County who obtain their positions not through competitive examination but rather through decisions in which political concerns may be a factor. Accordingly, the distinction drawn by the legislature cannot be said to fall far wide of the law's goal.
 
 
 19
 Finally, we note that the same type of mechanism approved in Barry for allowing the employee to forestall disclosure to inquiring individuals in certain circumstances is provided to the County employees. Indeed, the procedural safeguards provided by the Disclosure Board appear to go beyond what was thought to suffice in Barry, and plaintiffs here advised the district court that they provided substantially all the due process protection sought in the present action.
 
 CONCLUSION
 
 20
 We have considered all of plaintiffs' arguments in support of their challenge to the County's financial disclosure law and have found them without merit. Under the standard set by Barry v. City of New York, the County's law does not violate plaintiffs' rights to equal protection.
 
 
 21
 The judgment of the district court dismissing the complaint is affirmed.