John R. WILLIAMS, Jr., Plaintiff,

v.

DEPARTMENT OF VETERAN
AFFAIRS, et al.
Defendants.

Civ. A. No. 94–1545–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 29, 1995.

John D. Brosnan, Fairfax, VA, John G. Gill, Jr., Cynthia M. Kratz, Gill & Sippel, Rockville, MD, for plaintiff.

Helen F. Fahey, U.S. Atty., Larry Lee Gregg, Asst. U.S. Atty. (Appearing pursuant to 28 U.S.C. § 517), Alexandria, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *Bivens*[1] and Privacy Act[2] suit presents two threshold questions. The first is whether the moving defendants, employees of the Department of Veteran Affairs ("VA") enjoy qualified immunity from suit under the Constitution where one employee unlawfully disclosed a veteran's confidential medical information to an unauthorized third party and the remaining employees thereafter helped conceal the improper disclosure. The second and distinct question is whether a *Bivens* action based on the unauthorized disclosure of material covered by the Privacy Act should be foreclosed because the Privacy Act is a comprehensive legislative scheme that

provides the exclusive remedies for the conduct there proscribed.

I.[3]

Plaintiff John R. Williams, Jr. is a veteran of the Vietnam War. Since the war, he has experienced certain nervous and mental disorders for which he sought psychiatric treatment. In this regard, Williams consulted the Springfield Veteran Center ("Vet Center")[4] in September 1992 regarding his deteriorating mental and emotional state. He met first with Defendant Sherwin E. Little, Ph.D., a Vet Center counselor. During this visit, Williams indicated that his primary purpose in seeking treatment at the Vet Center was to attempt to reconcile with his wife, from whom he had separated, and to end what he considered to be a destructive relationship with his girlfriend. Dr. Little agreed to help Williams, and the two met periodically thereafter for therapy sessions at the Vet Center from September 1992 until February 3, 1993.

At one point during the course of this treatment, Dr. Little indicated to Williams that he believed it would be beneficial to invite Williams' wife and girlfriend to participate in his therapy program. Williams expressly rejected this suggestion. Although Dr. Little repeated this suggestion on several other occasions, focusing particularly on the desirability of including Williams' girlfriend in Williams' therapy regimen, Williams remained steadfast in his opposition to the idea. Nonetheless, and without Williams' permission, Dr. Little allegedly contacted the girlfriend by telephone on several occasions, revealing to her confidential information about Williams' mental condition and treatment program.

After learning of these unauthorized communications, Williams filed a complaint concerning Dr. Little's conduct with the Regional Manager of the Vet Center, Defendant Phillip M. Hamme, MSW. Hamme assigned an associate to investigate the complaint.

---

**1.** *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** 5 U.S.C. § 552a.

**3.** The recited facts are taken from the Complaint, which for purposes of this motion to dismiss, are taken to be true. *United States v. Gaubert*, 499

U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 540, 108 S.Ct. 1954, 1960–61, 100 L.Ed.2d 531 (1988)).

**4.** The Vet Center is a facility operated by the VA.

The associate completed his investigation within two weeks and told Williams he would receive a copy of the report, which Williams understood to be highly critical of Dr. Little. Notwithstanding the associate's assurances, Hamme later refused to approve the report's release to Williams. Instead, Hamme notified Williams that he would review the report, make any necessary revisions, and incorporate the findings into a letter. This was apparently done, and in the letter, Hamme assured Williams that the investigation had uncovered no evidence that Dr. Little had revealed any of Williams' confidences. Thereafter, Williams, suspicious that this was not so, made repeated, unsuccessful attempts to obtain a copy of the associate's initial report through requests under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. In response to Williams' requests for the report, agency officials indicated that the associate's report no longer exists because it simply constituted "draft findings" that were reviewed, incorporated into the letter sent to Williams, and then destroyed.

Williams contends that Hamme, with the assistance of his secretary, Defendant Linda Wilson, destroyed or concealed the report in order to cover up Dr. Little's unlawful behavior. In addition, Williams contends that in furtherance of this alleged cover-up, Dr. Little has since completed a "Request for and Consent to Release of Information" form that Williams had previously signed in blank with the understanding that it would not be completed without his consent. Williams claims he never gave that consent, nor did he ever consent to any release of his personal psychological information. Thus, contends Williams, Dr. Little completed the consent form as a cover or as an attempt to provide *post hoc* justification for his unlawful conduct.

In light of these events, Williams decided to discontinue his counseling sessions at the Vet Center. In lieu of these sessions, he began mental health treatment with Walter C. Guarino, M.D., a private psychiatrist. Hamme approved payment for these private sessions, acknowledging that continued treatment at the Vet Center would be inappropriate. After Williams' fifth session with Dr. Guarino, however, Hamme, without explanation, discontinued funding for this private treatment.

Thereafter, Williams filed suit against the VA for alleged violations of the Privacy Act, 5 U.S.C. § 552a, and against Dr. Little, Mr. Hamme, and Ms. Wilson ("the individual defendants") for alleged violations of his constitutional privacy and due process rights.[5] Specifically, Williams contends that the agency improperly disclosed material from his personal records to unauthorized third parties in violation of 5 U.S.C. § 552a(b), and wrongly withheld Williams' access to his own private records in violation of § 552a(d). With respect to the individual defendants, Williams claims that the improper disclosures by Dr. Little and the subsequent cover-up by all three individual defendants violated his constitutional right to privacy in his confidential medical information, a right he argues is firmly grounded in the First, Fourth, Fifth, and Ninth Amendments to the Constitution. In addition, Williams contends that by engaging in a wholesale cover-up of the improper disclosures, the individual defendants deprived him of his Fifth Amendment due process right to a valuable property interest, namely his entitlement to VA services as a disabled veteran. Because the alleged cover-up has led Williams to mistrust the VA, he claims that the agency's counseling services are no longer effective in his case and have therefore lost their value.

In response to this suit, the individual defendants filed the instant motion to dismiss on two independent grounds.[6] First, they claim that their qualified immunity as government agents protects them from suit in

---

**5.** The civil remedy provisions of the Privacy Act apply only against agencies, and not against private individuals. *See* 5 U.S.C. § 552a(g)(1); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1340 (9th Cir.1987). Therefore, Williams could not sue the individual defendants under the Privacy Act.

**6.** The VA has not moved for dismissal of this action, and Williams' claims against the agency remain unaffected by the disposition of the motion at bar.

this instance, since the constitutional law on privacy and due process is far from clearly established. Second, the individual defendants claim that the Privacy Act is a comprehensive statutory scheme that provides the exclusive remedy for the conduct alleged to have violated Williams' constitutional rights. Thus, they contend, it would be inappropriate to allow Williams to sue directly under the Constitution for conduct already regulated under the Privacy Act. Williams opposes the motion to dismiss, contending that qualified immunity should not be an obstacle to suit given the individual defendants' clear transgressions of law. Furthermore, he argues, nothing in the text or history of the Privacy Act precludes a victim of improper disclosures of personal information from bringing constitutional causes of action such as those presented here. Resolution of these disputes constitutes the task at hand.

## II.

▮▮▮▮ The first question presented is whether the individual defendants are immune from suit in this instance. It is undisputed that, as ordinary government officials, the individual defendants in this case are protected by a qualified, but not absolute, immunity. *See, e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Supreme Court addressed the contours of a qualified immunity defense in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There, the Supreme Court held that government actors protected by qualified immunity are immune from suit if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the conduct. *Id.* at 818, 102 S.Ct. at 2738. The inquiry is an objective one. Thus, in a case involving allegations of constitutional violations by government officials, the relevant question is not whether the government actor behaved maliciously or with ill intent, but rather whether a reasonable person in the official's situation

would have understood that the conduct was unconstitutional. *Id.* at 815–19, 102 S.Ct. at 2736–39. *See also Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Hodge v. Jones,* 31 F.3d 157, 162 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994). Furthermore, in determining whether the constitutional right at issue was "clearly established" at the time of the alleged violation, courts must look beyond the general acceptance of the right at its most abstract level. Because general constitutional rights such as "due process" and "privacy" continue to evolve and change form over time, it is not enough to observe that these rights are, at the most basic level, clearly established. Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Hodge,* 31 F.3d at 167. Thus, the qualified immunity analysis properly focuses on whether a reasonable official would know that her actions run afoul of an individual's constitutional rights.

▮▮▮ Of course, prior to determining whether a constitutional right has been "clearly established", it is necessary to determine "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The first right Williams claims the individual defendants violated is the constitutional right to privacy in personal medical information. Although there is no explicit reference in the Constitution to a right of privacy, the Supreme Court has found such a right to be implicit in the Constitution with respect to government efforts to prohibit the performance of abortions[7] or the use of contraceptive devices.[8] Whether that implicit constitutional right to "privacy" extends also to disclosure of private, confidential information has not been squarely confronted and resolved by the Supreme Court.[9] Nor has the

---

7. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

8. *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965).

9. Although the Court in *Whalen v. Roe,* 429 U.S. 589, 598–99, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977) strongly suggested that an individual's "interest in avoiding disclosure of personal mat-

Fourth Circuit explicitly declared such a right. Although *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 487–88 (4th Cir.1992) holds that disclosure of an anonymous blood donor's identity to the court and counsel would not violate the privacy rights of the donor, that Fourth Circuit panel specifically "le[ft] for another day the question of whether court-approved disclosure to a larger universe might violate the donor's privacy rights." *Id.* at 488 n. 9. Thus, while implying that at some point disclosure of private information may trigger constitutional protection, the Fourth Circuit panel left unresolved the parameters of such a right.

■ Other circuits are divided. While the Third and Fifth Circuits have explicitly recognized the right to privacy in confidential information,[10] the Sixth Circuit has expressly refused to do so in the absence of clear Supreme Court guidance to the contrary.[11] In any event, it is unnecessary to resolve the constitutional issue in this suit, for it is plain that the right, if it exists at all, is not yet so "clearly established" as to preclude the individual defendants from claiming qualified immunity for the alleged actions. That courts of appeal disagree regarding the existence of the privacy right here claimed is persuasive evidence that the right is not "clearly established," especially in the absence of clear guidance from the Fourth Circuit. As the panel in *Hodge* noted, "[t]o expect Defendants to resolve what reasonable jurists have long debated—namely the precise strictures of the penumbral right of familial privacy ...—is to impose burdens and expectations well beyond their reasonable capacities." 31 F.3d at 167. Here, too, the penumbral right of privacy in confidential medical information is far from clearly established, and the individual defendants' qualified immunity defense must prevail on this issue.

Similarly, Williams' claim that the individual defendants deprived him of his Fifth Amendment due process property right in disabled veterans' counseling services cannot survive the qualified immunity defense. It is important to note in this regard that Williams claims not that the individual defendants have refused to provide him additional counseling services at the Vet Center,[12] but rather that their behavior in allegedly disclosing his personal information to outsiders, followed by an elaborate cover-up, so destroyed his trust and confidence in the Vet Center that the value of its services to him has been effectively destroyed. Thus, Williams does not seek reinstatement of benefits, but requests instead money damages to compensate him for the asserted lost property interest.

In support of this claim, Williams relies heavily upon *Dunbar Corporation v. Lindsey*, 905 F.2d 754 (4th Cir.1990). There, the claimant purchased real property through a quitclaim deed and proceeded to make sub-

ters" may in some instances fall within the constitutionally protected "zone of privacy," it neither elaborated upon the parameters of this right, nor based its holding on the existence of such a right. Nor did the cases cited by the Court in its discussion stand for the proposition that there is a general privacy right in nondisclosure of private information. *Id.* at 599 n. 25, 97 S.Ct. at 876 n. 25 (citing primarily Justice Brandeis' now famous declaration of the "right to be let alone" in *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) as well as *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965)). Indeed, one year prior to *Whalen,* the Court in *Paul v. Davis,* 424 U.S. 693, 712–13, 96 S.Ct. at 1165–66, 47 L.Ed.2d 405 (1976) characterized as "far afield" from its privacy decisions plaintiff's claims of "constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge."

10. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir.1980) (stating that "medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection"); *Fadjo v. Coon,* 633 F.2d 1172, 1175–76 (5th Cir.1981) (recognizing privacy right generally in "private details" of a person's life).

11. *See J.P. v. DeSanti,* 653 F.2d 1080, 1087–90 (6th Cir.1981) (concluding that "the Constitution does not encompass a general right to nondisclosure of private information"); *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994) (reaffirming *DeSanti* ).

12. If this were Williams' claim, then the analysis would proceed to whether VA counseling services are a property right and, if so, whether Williams would be entitled to a hearing prior to being deprived of those benefits. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

stantial improvements to the land. The United States subsequently claimed ownership of the property and, without prior notice or hearing, sent military police to remove some of the claimant's possessions from the land and erect a fence around the perimeter. The claimant sued the military officials for deprivation of property in violation of the Fifth Amendment Due Process Clause. Noting that the Due Process Clause "does not 'safeguard only the rights of undisputed ownership' " but that it "extend[s] protection to 'any significant property interest' ", *id.* at 760 (quoting *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)), the Fourth Circuit held that the claimant's possessory interest in the property constituted a "significant property interest protected by the Fifth Amendment's Due Process Clause." Accordingly, the claimant's constitutional action for damages was allowed to proceed. *Id.*

■ It is doubtful that Williams has even stated a Fifth Amendment Due Process Clause claim. As with the constitutional privacy question, however, the Court need not, and does not, resolve this issue. For, even if the alleged conduct rises to the level of an unconstitutional property deprivation, this oddly crafted due process claim is far from clearly established. Although instructive on a general level, the *Dunbar* case simply does not speak to the issue presented here. Whether the individual defendants' behavior in allegedly disclosing Williams' confidential information and attempting to keep the disclosure secret "deprived" him of a valuable property right is quite different from the issue raised in *Dunbar.* While erecting a fence on real property plainly deprives the property possessor of an interest in the property (namely possession), behavior that causes a VA benefits claimant to mistrust the agency does not so clearly deprive the claimant of those benefits. In other words, reading *Dunbar,* a government official would not be put on notice that alienating or offending a benefits claimant would unconstitutionally deprive the claimant of a valuable property interest. As a result, it is not "clearly established" that the Fifth Amendment right to

due process applies to the facts of this case, and therefore, the individual defendants' qualified immunity defense must prevail here as well. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

■ Seeking to avoid this result, Williams protests that the conduct alleged in his complaint was clearly and indisputably improper. He argues that all reasonable government officials know that ethical and legal rules prohibit their disclosure of confidential medical information to unauthorized third parties. Thus, he claims, no reasonable official would have considered the alleged conduct to be lawful. Although the alleged conduct may well violate the Privacy Act,[13] Williams' argument in this regard misses the mark. When examining a qualified immunity defense to an action brought under the Constitution, the question is not whether reasonable government actors would know that the alleged behavior was wrong, unethical, or illegal under state or federal statutes and rules, but whether they would believe it to be *unconstitutional. See Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) (stating that "officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"). *See also Belcher v. Oliver,* 898 F.2d 32, 36 (4th Cir.1990); *Goyco de Maldonado v. Rivera,* 849 F.2d 683, 687 (1st Cir.1988); *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). As noted, while the alleged disclosures and cover-up may have clearly violated the Privacy Act and ethical norms, these actions do not clearly amount to constitutional privacy and due process violations.

■ Williams' allegations that the individual defendants acted with ill will and malicious intent also do not advance his attempt to defeat the individual defendants' qualified immunity defense. As the Supreme Court plainly articulated in *Harlow,* 457 U.S. at 815–18, 102 S.Ct. at 2736–38, the inquiry into whether a right is "clearly established" is an objective one, based on a reasonable person's

---

**13.** Perhaps various professional ethical rules prohibit the alleged conduct as well.

knowledge and not the subjective mind state of the actor. Thus, the individual defendants' subjective intent, however malicious, is irrelevant to the qualified immunity question.

Therefore, the individual defendants' qualified immunity defense prevails over both constitutional grounds alleged, and the motion to dismiss must be granted.

## III.

Although the qualified immunity defense disposes of the entire case against the individual defendants, it is worth addressing a second, alternative ground for dismissal, namely that the constitutional remedy sought here is unavailable given the comprehensive remedial structure of the Privacy Act.

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established that a person whose constitutional rights are violated by a federal official may, in some instances, sue the official for money damages directly under the constitutional provision at issue. But a constitutional cause of action is not available in all circumstances. Specifically, the Court in *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980), indicated that *Bivens* actions, as they have come to be known, cannot be maintained in two situations. The first such situation arises when there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 18, 100 S.Ct. at 1471 (quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004–05). The second occurs when "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18–19, 100 S.Ct. at 1471 (citing *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005).

The parties agree that Congress did not explicitly declare the Privacy Act to be a substitute for an action directly under the Constitution. Thus, the second identified circumstance where a *Bivens* action would be unavailable is not present here. Rather, the dispute arises over whether the extensive provisions of the Privacy Act governing disclosure of confidential information and access to agency records constitute "special factors" that counsel against providing an additional remedy under the Constitution.

The Supreme Court elaborated on the "special factors" exception in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). There, an employee of the National Aeronautics and Space Administration sued the agency for alleged First Amendment violations after the agency demoted him based on negative statements he had made to the press. Congress had never sanctioned such a claim by a government employee, nor had it expressly prohibited it. Nonetheless, the Supreme Court denied the claim based upon "special factors" rendering the constitutional cause of action improper. Noting the "elaborate, comprehensive scheme" of statutes, Executive Orders, and regulations that protect civil servants and provide·detailed and meaningful remedies for their grievances, *id.* at 385, 103 S.Ct. at 2414–15, the Supreme Court concluded that "it would be inappropriate ... to supplement that regulatory scheme with a new judicial remedy." *Id.* at 368, 103 S.Ct. at 2406. That existing remedies did not accord "complete relief" to the plaintiff was unpersuasive in the Court's view. *Id.* Rather, the Supreme Court left to Congress the essentially legislative judgment whether to permit a federal employee to recover damages against a supervisor for violations of his First Amendment rights. *Id.* at 390, 103 S.Ct. at 2417–18 (stating that "Congress is in a better position to decide whether or not the public interest would be served" by creating such a remedy).

More recently, the Supreme Court identified three areas in which *Bivens* remedies have been permitted,[14] but then noted that it has since been consistently hesitant to extend the *Bivens* remedy beyond these established contexts. *Schweiker v. Chilicky*, 487 U.S.

14. These three areas are: (1) Fourth Amendment violations, *Bivens*, 403 U.S. at 388, 91 S.Ct. at 1999; (2) Fifth Amendment Due Process Clause violations, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and (3) violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

412, 421, 108 S.Ct. 2460, 2466–67, 101 L.Ed.2d 370 (1988). In *Chilicky,* several social security recipients whose disability benefits had been erroneously terminated and subsequently restored sued officials at the Department of Health and Human Services for Fifth Amendment due process violations. As in *Bush,* extensive legislation and regulations already governed the allegedly unconstitutional behavior. Following a lengthy discussion of *Bush* and other case law surrounding the issue, the Supreme Court summarized what "special factors counselling hesitation in the absence of affirmative action by Congress" has come to mean.

> [T]he concept of "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2468. Given this, the Supreme Court in *Chilicky* concluded, as it had in *Bush,* that the fact that Congress had not provided "complete relief" [15] did not necessitate the creation of a *Bivens* remedy for the alleged violations. *Id.* at 425, 108 S.Ct. at 2468–69. Because Congress had instituted a remedial scheme that provided "meaningful safeguards or remedies" for people in the claimants' situation, the Court was unwilling to augment the legislative scheme with its own, judicially imposed remedies. *Id.* at 425–27, 108 S.Ct. at 2468–70.

 *Bush* and *Chilicky* provide significant insight into the meaning and proper application of the "special factors" exception to *Bivens* actions. Those decisions make plain that even where Congress has not explicitly indicated that a given statutory or regulatory scheme is intended to substitute, rather than merely supplement, recovery directly under the Constitution, *Bivens* actions may yet be inappropriate where that legislative scheme provides meaningful remedies for the proscribed conduct. In such circumstances, it may be reasonable to assume that Congress' failure to provide the full range of possible remedies reflects a deliberate choice in how best to balance the competing policy interests of an injured individual's need for redress and the effective operation of government.

 These principles, applied to the case at bar, point persuasively to the conclusion that Williams cannot maintain a separate *Bivens* action for the conduct alleged in the Complaint. The Privacy Act directly addresses and regulates the conduct of which Williams complains. Specifically, section 552a(b) prohibits an agency from disclosing information contained in an individual's record except in certain, specified situations. Similarly, section 552a(d) provides detailed directives regarding an individual's request for access to, and amendment of, her records. Importantly, the Privacy Act also provides extensive, albeit incomplete, remedies for violations of the disclosure and access requirements. § 552a(g). Although the Privacy Act does not provide remedies against individual officials who disobey its terms, *see, e.g., Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1340 (9th Cir.1987), it does provide aggrieved parties with significant remedies against the offending agency. Specifically, an agency that fails to comply with any provision of the Privacy Act "in such a way as to have an adverse effect on an individual," § 552a(g)(1)(D), is subject to suit in United States District Courts. § 552a(g)(1). Among the available remedies against the agency are: an order to amend the individual's record if it contains inaccuracies, plus reasonable attorney fees, § 552a(g)(2); an injunction against improper withholding of an individual's records, plus reasonable attorney fees, § 552a(g)(3); and

---

**15.** In *Chilicky,* the governing statutes and regulations only entitled the claimants to reinstatement of benefits and payment of back benefits. 487 U.S. at 417, 108 S.Ct. at 2464–65. Congress provided no remedy in damages against individual officials for emotional distress or other incidental costs associated with the period of nonreceipt of benefits. *Id.* at 425, 108 S.Ct. at 2468–69.

the greater of actual damages or damages in the amount of $1000 for improper disclosures that were made willfully, plus reasonable attorney fees, § 552a(g)(4).

■■■ Thus, Congress has specifically addressed the circumstances alleged by Williams and has provided significant and meaningful remedies that he may pursue. As in *Bush* and *Chilicky*, the fact that the remedies are not exhaustive neither mandates nor invites the creation of an alternative avenue of relief under the Constitution. Congress has crafted what it considers to be appropriate remedies for disclosure and record access violations. Given the extensiveness of this remedial scheme, its failure to include additional remedies, such as damages against individual officials or punitive damages, does not appear to be inadvertent. Therefore, it would be improper to permit Williams to augment his claims under the Privacy Act with additional remedies under the Constitution.[16]

Williams disputes the applicability of *Bush* and *Chilicky*, contending instead that the Supreme Court's decision in *Carlson* controls the disposition of this case. In *Carlson*, a deceased prisoner's estate brought suit against federal prison officials, claiming that their failure to provide the prisoner with adequate medical attention violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. 446 U.S. at 16, 100 S.Ct. at 1470. Recognizing that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680, already provided a remedy for the conduct alleged, the Supreme Court held nonetheless that the "special factors" exception did not apply and that a separate *Bivens* action could be maintained. *Carlson*, 446 U.S. at 19, 100 S.Ct. at 1471–72. In particular, Williams points out, the Supreme Court noted that the FTCA does not provide a damages remedy against individual officials, rendering the relief available and the accompanying deterrent effect less significant than under a *Bivens* remedy. *Id.* at 20–21, 100 S.Ct. at 1472–73. Similarly, Williams argues, the Privacy Act accords incomplete relief, and in the absence of direction from Congress to the contrary, courts should not hesitate to provide additional remedies under the Constitution.

■■■ Williams' reliance on *Carlson*, while understandable, is misplaced. Although it is true that the *Carlson* Court emphasized to some degree the desirability of providing a full range of remedies through *Bivens* actions, the opinion also stresses that the legislative history of Congress' amendments to the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.* at 19–20, 100 S.Ct. at 1472. Thus, Congress had explicitly approved courts' use of judicially created remedies under the Constitution to supplement the remedies Congress had already provided under the FTCA. Faced with such a clear indication of Congressional intent in this regard, the Court in *Carlson* could hardly have concluded that deference to the legislative scheme was required. By contrast, the case at bar presents no such clear invitation from Congress to augment its existing, carefully crafted statutory scheme

16. In reaching this result, it is worth noting that other federal district courts faced with this issue have reached the same conclusion. *See Mittleman v. United States Treasury*, 773 F.Supp. 442, 454 (D.D.C.1991) (holding that constitutional claims regarding government officials' disclosure of information in plaintiff's records were barred by Privacy Act); *Patterson v. F.B.I.*, 705 F.Supp. 1033, 1045 n. 16 (D.N.J.1989) (noting that claims arising out of the FBI's maintenance of records on plaintiff are "apt to be foreclosed by the existence of the Privacy Act"), *aff'd,* 893 F.2d 595 (3d Cir.), *and cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Mangino v. Department of the Army*, No. 94–2067, 1994 WL 477260, at *8–9, 1994 U.S.Dist. LEXIS 12313, at *25 (D.Kan. Aug. 24, 1994) (observing that "any *Bivens* claims that plaintiff might have had with respect to [government official's] disclosures are barred by the Privacy Act").

The Court is also aware of one decision where a district court held that a *Bivens* claim for improper disclosures by government officials was not foreclosed by the Privacy Act. *Doe v. United States Civil Serv. Comm'n*, 483 F.Supp. 539 (S.D.N.Y.1980). Two points distinguish this case and lessen its impact here. First, in permitting the *Bivens* claim, the court in *Doe* relied in part on the fact that the plaintiff's claims related partially to events that preceded the effective date of the Privacy Act. *Id.* at 564. Second, and more significantly, the *Doe* court rendered its decision without the benefit of the *Bush* and *Chilicky* opinions, Supreme Court precedent that bears directly on the issues presented there and here.

with additional *Bivens* remedies. Furthermore, the intervening decisions in *Bush* and *Chilicky* plainly reject an automatic resort to *Bivens* remedies whenever the statutory remedies are less than complete.[17]

Therefore, the Privacy Act provides the exclusive remedies for Williams' grievances, and the motion to dismiss must be granted on this ground as well.

An appropriate order has already issued.

---

**17.** Also worth noting is that the Privacy Act, unlike the FTCA, is sharply focused on specific conduct and subject matter. This narrow statutory focus suggests that Congress actually confronted and considered the circumstances raised here and provided what in its judgment were the appropriate remedies. The FTCA, on the other hand, relates broadly to a wide range of tortious conduct, thus inviting the inference that Congress has left open the question whether in specific contexts the FTCA should be supplemented by the availability of a *Bivens* action.