Rodger R. SULLIVAN, Plaintiff,

v.

UNITED STATES POSTAL SERVICE and Rodney Brown, Defendants.

No. 94–CV–6180L.

United States District Court, W.D. New York.

Nov. 5, 1996.

Matthew J. Fusco, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for plaintiff.

Brian M. McCarthy, Assistant United States Attorney, United States Attorney, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff, Rodger R. Sullivan ("Sullivan"), filed a complaint on April 2, 1994, against the United States Postal Service ("Postal Service") and Rodney Brown ("Brown"), a Postal Service employee. Plaintiff claims that the Postal Service violated his rights under the Privacy Act (5 U.S.C. § 552a(b)). Plaintiff also brings a *Bivens*[1] claim against Brown alleging that Brown violated Sullivan's constitutional rights by infringing on his right to privacy. Defendants move for summary judgment on both claims. Defendants' summary judgment motion is granted in part and denied in part. The constitutional violation is dismissed but the claim under the Privacy Act may proceed.

### FACTS

The facts as alleged by Sullivan are the following.

Sometime in 1988 Sullivan took a civil service test for employment with the Postal Service. In September, 1993, Sullivan was hired by Lewis General Tires as a management trainee. In late December, 1993, Sullivan received a notice in the mail informing him of an opening at the Postal Service. On or about January 2, 1994, Sullivan completed an employment application with the Postal Service. One part of the application requested the applicant to name his current employer. Sullivan identified Lewis General Tires as his current employer but checked "No" next to that part of the application that asked if the Postal Service could contact his current employer.

Sullivan, along with three other applicants, was interviewed for the position by defendant Brown on January 4, 1994. According to Sullivan, Brown failed to inform the applicants of their rights under the Privacy Act. During the interview, Brown did inform the applicants that he would make his selection for the available position based on test scores, orientation, background and information from employers. After the interview, in spite of Sullivan's instructions to the contrary, Brown contacted Sullivan's employer, Lewis General Tires, and informed them that Sullivan had applied for employment with the Postal Service. According to Sullivan, as a result of the disclosure, he was terminated from his employment at Lewis General Tires on February 17, 1994. He was not hired by the Postal Service.

### DISCUSSION

**I. Standards for Summary Judgment**

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All ambiguities and inferences must be resolved in favor of the non-moving party and all doubts as to the existence of a genuine material issue for trial should be resolved against the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

If, when "[v]iewing the evidence produced in the light most favorable to the non-movant ... a rational trier could not find for the non-movant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror*

---

**1.** *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir. 1991); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. *Bivens* constitutional action against Brown

■ Sullivan alleges that Brown violated Sullivan's constitutional right to privacy by disclosing to Sullivan's employer that he had applied for employment with the Postal Service. Under *Bivens,* an award of money damages for a constitutional violation is permitted where Congress has not expressly prohibited such a remedy and where no special factors counsel hesitation in implying such a remedy. *Bivens,* 403 U.S. at 396–397, 91 S.Ct. at 2004–2005; *Schweiker v. Chilicky,* 487 U.S. 412, 421, 108 S.Ct. 2460, 2466–2467, 101 L.Ed.2d 370 (1988).

### A. *Qualified Immunity Defense*

■ It is clear that summary judgment must be granted as to Brown on the basis of qualified immunity. It is well-established that issues involving the defense of qualified immunity should ordinarily be decided "at the earliest possible stage in litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3034 n. 6, 97 L.Ed.2d 523 (1987); *Hunter v. Bryant,* 502 U.S. 224, 226–228, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). In accordance with this exhortation, the Second Circuit has said that "[t]he better rule, we believe, is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment ..." *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.1990).

■ Since the relevant facts needed to resolve the question of Brown's qualified immunity are not in dispute, it is proper for me to decide the issue at the summary judgment stage.

■ "State officials performing discretionary functions are shielded from liability for civil damages ... insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known. Even when such rights are clearly established, qualified immunity also protects a government official if it is objectively reasonable for [the official] to believe that his acts did not violate those rights." *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990) (citations and internal quotations omitted).

■ The touchstone of the qualified immunity defense is "objective legal reasonableness." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–3040, 97 L.Ed.2d 523 (1987). The principal issue, therefore, is whether, in 1994, when the events in question occurred, Sullivan had a clearly established constitutional right to privacy concerning the type of information disclosed by Brown. See *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Only if Sullivan had such a right, and Brown should reasonably have known that his conduct was illegal, would Brown lose the protection of qualified immunity. *Id.*

■ In determining whether a particular right was clearly established at the time a defendant acted, the Second Circuit considers three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under the preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). Other Courts of Appeals that have addressed this issue have generally held that a rule may be clearly established by the Supreme Court, the appropriate Court of Appeals, or the highest court in the state in which the case arose. See e.g. *Robinson v. Bibb,* 840 F.2d 349 (6th Cir.1988); *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981). *But see Capoeman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985) ("in the absence of binding precedent, a court should look to whatev-

er decisional law is available to ascertain whether the law is clearly established ...").

The Second Circuit has recognized a protected privacy interest in certain personal matters. See *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) (holding that plaintiff did possess a constitutional right to confidentiality in his HIV status.); *Eisenbud v. Suffolk County*, 841 F.2d 42, 45 (2d Cir. 1988) (right to privacy exists as to financial information); *Barry v. City of New York*, 712 F.2d 1554, 1559 (2d Cir.1983) (recognizing privacy of personal matters as a protected interest). None of these cases, however, concerned the type of information at issue in the present case. *Barry* and *Eisenbud* both involved governmental regulations requiring certain individuals to disclose detailed financial information. *Doe* extended the right to confidentiality established by *Barry* and *Eisenbud*, to include personal medical information.

In the present case, the only information disclosed was the fact that Sullivan had completed an application for employment with the Postal Service. Sullivan does not contend that Brown disclosed any information from the employment application other than his name. The information that was disclosed simply is of a different category than the disclosure that an individual was HIV positive as occurred in *Doe* and the compulsory financial disclosures at issue in *Barry* and *Eisenbud.*

I find that any right to privacy that Sullivan may have had to the information disclosed by Brown was not "clearly established" and, therefore, Brown is shielded by immunity for his error in disclosing the information. At the time of Brown's disclosure, the right in question, as it pertains to the present case, was not defined with "reasonable specificity." The case law, while recognizing a general right of privacy in certain matters, does not support a broad right of privacy concerning disclosure of a job applicant's identity. Under pre-existing law, a reasonable defendant official would not have known that the disclosure was unlawful.

Simply put, at the time of Brown's disclosure, case law supporting the right to privacy in personal information had not evolved sufficiently so as to put Brown on notice that his disclosure violated Sullivan's constitutional rights. Brown's acts are protected by qualified immunity and this claim must be dismissed.

### B. *Privacy Act Impact on Bivens Claim*

■ Even if Brown was not entitled to qualified immunity, Sullivan's *Bivens* action must still be dismissed because the Privacy Act precludes a *Bivens* action for damages. *Bivens* established that an action for money damages against a federal official for a constitutional violation is authorized in certain circumstances, i.e. where Congress has not expressly prohibited such a remedy and where no special factors counsel hesitation in implying such a remedy. *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004–2005. Post–*Bivens* case law has held that a special factor that would counsel hesitation is where there exists a comprehensive legislative scheme providing meaningful remedies against the United States for the violations at issue. *Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). Such a "comprehensive scheme" for dealing with privacy violations exists in the Privacy Act. "The Privacy Act directly addresses and regulates the conduct of which [plaintiff] complains. Specifically, section 552a(b) prohibits an agency from disclosing information contained in an individual's record except in certain, specified situations." *Williams v. Department of Veteran Affairs*, 879 F.Supp. 578, 586 (E.D.Va.1995). Further, the Privacy Act provides extensive relief for violation of the disclosure prohibitions. See § 552a(g).

Sullivan relies on *Doe v. U.S. Civil Service Commission*, 483 F.Supp. 539 (S.D.N.Y.1980) as support for his contention that the Privacy Act does not preclude a *Bivens* action. *Doe*, however, has little value since it predated later Supreme Court decisions in *Bush* and *Chilicky*. Both *Bush* and *Chilicky* involved claims that were covered under comprehensive legislative schemes and both precluded civil rights actions because of those remedies. In *Bush*, where a federal employee sued his superiors for violations of his First Amendment rights, the Supreme Court stated that "[b]ecause such claims arise out of an em-

ployment relationship that is governed by comprehensive and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate to supplement that regulatory scheme with a new financial remedy." *Bush,* 462 U.S. at 368, 103 S.Ct. at 2406.

To the same effect, the Court in *Chilicky,* held that a *Bivens* action by a Social Security recipient for wrongful termination of benefits was precluded due to the elaborate remedial scheme devised by Congress through Social Security legislation. *Chilicky,* 487 U.S. at 414, 108 S.Ct. at 2463.

As the Court stated in *Chilicky,* the fact that Congress in enacting the remedial legislation, did not provide "complete relief" does not necessitate the creation of a *Bivens* remedy for the alleged violations. See *Chilicky,* 487 U.S. at 425, 108 S.Ct. at 2468–2469.

Thus, I find that, under the rationale of both *Bush* and *Chilicky,* the Privacy Act precludes Sullivan's *Bivens* action against Brown.

### III. Privacy Act

■ Sullivan alleges that the Postal Service violated his rights under the Privacy Act, 5 U.S.C. § 552a, which provides in part that "[n]o agency shall disclose any record which is contained in a system of records .. to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, ...".

The Postal Service contends that Sullivan's claim must fail because: (1) Brown did not "disclose" a Privacy Act record; (2) Brown's telephone call to Sullivan's employer was not the proximate cause of Sullivan's termination; and (3) Brown's action was not intentional and willful.

Although the Postal Service appears to concede that Sullivan's application for employment with the Postal Service was a "record" for purposes of the Privacy Act, it contends, nevertheless, that there was no violation of the Act because Brown did not disclose any information from the application to a third party. The Postal Service attempts to distinguish between disclosing

the fact that a record existed and disclosing information contained in the record. I am not persuaded by this argument.

The Privacy Act defines "record" as "... any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name ..." 5 U.S.C. § 552a(a)(4).

As stated above, the Postal Service concedes as it must that the employment application Sullivan completed was a "record" for Privacy Act purposes. See *Miller v. United States,* 630 F.Supp. 347, 348 (E.D.N.Y.1986) (material prepared to determine eligibility for federal employment constitutes a "record."); *Quinn v. Stone,* 978 F.2d 126, 133 (3d Cir.1992) (a "record" means any item of information about an individual that includes an individual identifier.) Sullivan's name was part of the information contained on the record. Brown disclosed information that a current employee named Sullivan had applied for employment by telephoning the employer and apprising him of that information. It is true that Brown did not disclose any other information from the application but defendants' claim that Brown did not disclose *any* information is simply incorrect.

■ "While the [Privacy] Act does not specifically define "disclosure," common sense requires that this term be taken to denote the imparting of information which in itself has meaning and which was previously unknown to the person to whom it was imparted." *Harper v. United States,* 423 F.Supp. 192, 197 (D.S.C.1976); *See also King v. Califano,* 471 F.Supp. 180, 181 (D.C.1979).

Brown's telephone call to Sullivan's employer during which Brown informed the employer that Sullivan had filed an employment application with the Postal Service had meaning in itself and disclosed to the employer information about Sullivan that he had not previously known. Thus, I find that Brown's action constituted a "disclosure" of a record for the purpose of the Privacy Act. On this summary judgment motion, I am unable to rule as defendants request that Brown's acts

did not constitute disclosure of protected information.

■ Defendants further contend that even if Brown's call constituted an improper disclosure, Sullivan's claim should be dismissed because the disclosure was not the proximate cause of Sullivan's termination from his employment. However, the question of proximate cause is a disputed question of material fact. The record indicates that: Sullivan's employer rated his work "satisfactory" several weeks prior to the decision to terminate him (Deposition of Edward L. Schultz[2], June 23, 1995, p. 102); the employer had no intention of terminating Sullivan's employment prior to receiving the telephone call from Brown (Schultz Deposition, p. 119); and the telephone call from Brown was the "ultimate" reason for the employer's decision to terminate Sullivan's employment (Schultz Deposition, p. 114). While it is true that there is also evidence in the record indicating that Sullivan's employer was concerned about Sullivan's work performance prior to Brown's telephone call, given the record before me it is inappropriate on this motion to resolve issues concerning proximate cause.

■ Lastly, defendants claim that Brown's action was not "intentional or willful." To prevail in an action brought pursuant to the Privacy Act, a plaintiff must prove that "the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). "The legislative history describes this standard as 'somewhat greater than gross negligence.'" *Dowd v. I.R.S.,* 776 F.2d 1083, 1084 (2d Cir.1985), quoting *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act,* 120 Cong.Rec. 40406, 40882 (1974). In the present case, the Postal Service contends that Brown's disclosure was not intentional but rather the result of a mistake. This also is a disputed fact issue. The Postal Service contends that Brown did not have much experience in hiring personnel and was unaware of the rule against contacting the current employer of an applicant without the applicant's consent. Sullivan, on the other hand, con-

tends that Brown's action was intentional and willful as evidenced by the fact that Brown admitted that he knew that the employment application was covered by the Privacy Act; admitted that he had received training concerning the Privacy Act; and admitted that "waiver" forms existed but that he took no steps to obtain a waiver permitting him to contact Sullivan's employer. Brown also acknowledged that the employer's name and telephone number was on the application directly below the box where Sullivan had checked "no" when asked if he was willing to have his current employer contacted.

Whether Brown's disclosure was intentional or willful is a question of fact which cannot be disposed of summarily on the record before me.

I have considered defendants' other arguments in support of their summary judgment motion and find them to be without merit.

### CONCLUSION

The Postal Service's motion for summary judgment on Sullivan's first cause of action alleging a Privacy Act violation is DENIED.

Defendant Brown's motion for summary judgment on Sullivan's second cause of action alleging a violation of his constitutional right to privacy brought pursuant to *Bivens* is GRANTED. Brown is hereby dismissed as a party defendant in this action.

IT IS SO ORDERED.

---

**2.** Edward L. Schultz was the office manager of Lewis General Tires at all times relevant to this lawsuit.