**Samuel M. LEVINE, Plaintiff,**

**v.**

**Edward F. McCABE, and Jonathan Lippman, Defendants.**

**No. 03–CV–6420 (DRH)(ETB).**

United States District Court, E.D. New York.

Feb. 23, 2005.

---

Samuel Levine, Long Beach, NY, Plaintiff Pro Se.

Office of the Attorney General of New York, by Susan M. Connolly, Esq., Hauppauge, NY, for Defendants.

### *MEMORANDUM & ORDER*

HURLEY, District Judge.

I. *Introduction:*

Plaintiff Samuel Levine, a retired Nassau County district judge, has brought the present Section 1983 suit against Defendants Jonathan Lippman, Chief Administrative Judge for the New York State Unified Court System, and Edward G. McCabe, the Administrative Judge of the courts of Nassau County. Levine alleges that the Defendants unfairly refused to appoint him to a position as a "judicial

hearing officer," and that in doing so, they violated his constitutional rights. Levine seeks monetary damages, as well as a declaratory judgment that New York's entire statutory scheme governing the appointment of judicial hearing officers is unconstitutional. The Defendants have moved to dismiss Levine's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Defendants' motion is GRANTED, but Levine may move to amend his complaint.

## II. *Background:*

According to Levine's complaint and the documents attached thereto, Levine has been a practicing attorney in New York since 1950. He has been described as a "gadfly" and a champion of "seemingly hopeless causes." In 1996 he was elected to a term as a Nassau County district court judge for the county's "First District," and as such, apparently automatically became the "President of the Board of Judges" or the "presiding judge" of the Nassau County district courts. The New York Times described Levine as "a perennial Democratic also-ran in predominantly Republican Nassau county," and his election was apparently something of an upset. Levine states that as presiding judge of the Nassau County district courts, he was supposed to be "in charge of the daily operation and administration of the District Court subject to the control and reporting to Defendant McCabe." But according to Levine, McCabe, as a Republican, maneuvered to keep all power and authority in his own hands. Levine also insists that McCabe "ignored and failed to act on many serious problems in the District Court set forth [in] Levine['s] reports and recommendations," and made efforts to prevent Levine from presiding

over a politically-charged case. McCabe's motives, insists Levine, were "political retaliation and prejudice" against him.

On December 31, 1999, having apparently reached the age of 70, Levine retired pursuant to the New York Constitution's mandatory judicial retirement provision.[1] Shortly prior to his retirement, Levine applied to be designated as a judicial hearing officer, pursuant to the provisions of the New York Judiciary Law. Section 850 of that law states in relevant part:

1. Subject to the . . . rules of the chief administrator of the courts, any person who has served as a judge or justice of a court of record of the unified court system . . . but who no longer holds judicial office, may, upon his application, be designated by the chief administrator as a judicial hearing officer upon a determination by the chief administrator (a) that the former judge has the mental and physical capacity to perform the duties of such office and (b) that the services of that former judge are necessary to expedite the business of the courts.

Pursuant to this law, the Chief Administrator of New York's Unified Court System has promulgated regulations governing the process of application for judicial hearing officer positions. Title 22 of the New York Compilation of Codes, Rules, and Regulations, Section 122.1 states in relevant part:

Application. (a) Any person who has served for at least one year as a judge or justice of a court of the Unified Court System . . . and who no longer is serving in such capacity, . . . may make application to the Chief Administrator of the Courts to be designated as a judicial hearing officer pursuant to article 22 of the Judiciary Law. . . . The application

---

**1.** The New York Constitution, Article 6, § 25, subdivision b states in relevant part: "Each . . . judge of the district court shall retire on

the last day of December in the year in which he or she reaches the age of seventy."

shall be in such form as may be provided by the Chief Administrator, which shall contain items requesting prior judicial experience, the nature of judicial service sought, and whether any actions against the judge have been taken by, or any claims are pending before, any professional disciplinary body.

Section 122.2 of the regulations states in relevant part:

Initial designation. (a) The Chief Administrator of the Courts, in his or her discretion, may designate as a judicial hearing officer an eligible person who files an application pursuant to section 122.1 of this Part upon determination that the applicant has the physical and mental capacity, competence, work ethic, experience and judicial temperament necessary to perform the duties of a judicial hearing officer, and is well qualified to serve on the panels in the courts to which he or she will be designated.

(b) The applicant shall undergo a comprehensive physical examination by a physician designated by the Chief Administrator, who shall issue a report to the Chief Administrator that the applicant has or has not the physical and mental capacity to perform competently the duties of a judicial hearing officer.

(c) In determining whether to designate an applicant as a judicial hearing officer, the Chief Administrator shall consult with (1) the Presiding Justice of the appropriate Appellate Division, (2) the appropriate Deputy Chief Administrator for the Courts, within or outside the City of New York, (3) the appropriate administrative judge who shall submit a written evaluation of the applicant, and (4) the appropriate judicial hearing officer selection advisory committee established pursuant to subdivision (e) of this section.

(d) The Chief Administrator also may consult with other appropriate persons and bar associations and conduct whatever investigation the Chief Administrator deems necessary to determine the qualifications of an applicant, including requiring additional medical examinations.

(e) (1) The Chief Administrator, after consultation with the Presiding Justice of the appropriate Appellate Division, shall establish judicial hearing officer selection advisory committees for [each] Judicial Department ...

(2) Every applicant for designation to the office of judicial hearing officer shall be evaluated prior to designation by the committee established for the principal jurisdiction in which the applicant applies to serve, which shall interview the applicant and may require the applicant to submit any appropriate materials.... The committee shall set forth whether each applicant is qualified to serve as a judicial hearing officer based upon competence, work ethic, experience and judicial temperament necessary to perform duties of a judicial hearing officer....

And Section 122.7 of the regulations states in full: "No vesting of rights. Nothing herein shall vest any person with any right to be designated as a judicial hearing officer, or to be designated to a panel, or to serve in any particular court or to be assigned to any particular proceeding or type of proceeding."

According to Levine, he satisfied the statutory and regulatory requirements, in that he was "well qualified" to be a judicial hearing officer, and his application included an "extraordinary array of supporting documentation" to prove it. On January 26, 2000, Levine was interviewed by the judicial hearing officer selection advisory committee appointed by Lippman for Nassau County. Levine believes that the committee received and reviewed a report from McCabe recommending that his ap-

plication be denied, and that the committee recommended the same. In a letter dated March 9, 2000, Lippman informed Levine that his application had been denied. Levine's immediate request for reconsideration of that decision was denied in a subsequent letter from Lippman, dated March 30, 2000. Levine asserts that he was "denied the right and opportunity to receive a copy of [McCabe's] negative report and recommendations," that the Defendants "failed to submit or serve [him with] any written charges or complaints concerning his conduct or services or other facts impacting on the questions of competence, work ethic, experience or judicial temperament," and that he was "denied notice of any such charges or complaints." On June 30, 2001, Levine submitted a new application to be a judicial hearing officer, this time in Queens County. This application was denied as well, but without any further interview or hearing.

On December 23, 2003, Levine filed the present suit pursuant to 42 U.S.C. § 1983. He seeks a declaratory judgment that New York's statutory scheme for appointment of judicial hearing officers is unconstitutional, a declaratory judgment that the Defendants violated various types of his civil rights, as well as $1,200,000 in money damages and $300,000 in costs and fees from the Defendants. The Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be based.

III. *Dismissal: Legal Standards*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The court must accept the factual allegations contained in the complaint as true,

and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief in support of his claim. *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir.2003). The issue is not how likely the plaintiff is to ultimately prevail, but whether he is entitled to even offer evidence to support his claims. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976) (per curiam) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). These standards apply with particular strictness where, as here, the complaint alleges civil rights violations. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995).

Nevertheless, although a court must accept the facts alleged in the nonmovant's complaint, "conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 400 n. 3 (2d Cir.1994). "[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir.1994) (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977)). And although Courts also must normally construe pro se complaints liberally, *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir.2000), practicing attorneys who choose to represent themselves cannot

claim the special considerations normally afforded to pro se litigants. *Harbulak v. Suffolk County,* 654 F.2d 194, 198 (2d Cir. 1981).

## IV. *The Relevant Statute of Limitations Bars Some, but not All of Levine's Claims.*

The Defendants' first, and threshold, argument is that Levine's entire lawsuit is time-barred under the three-year statute of limitations that governs Section 1983 claims brought in New York. Levine argues in response that "[n]o time limit is set in the federal statute," that "[t]his is not a negligence or tort case where the three year limit might apply," and that there is no statute of limitations covering declaratory judgments or claims for damages. Alternatively, Levine argues that even if a three-year statute of limitations applies, his "second application of June of 2001 was a continued act," [emphasis removed] and "the last act of defendants in denying Plaintiff's application took place on December 12, 2001." Although at least some of Levine's specific claims are time-barred, his final point saves this lawsuit from dismissal in its entirety.

### A. *A three-year statute of limitations applies to Section 1983 claims brought in New York.*

■ It is well-established and "beyond the cavil" that in New York, Section 1983 actions must be filed within three years of the date on which the plaintiff becomes aware of an alleged injury. *See Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995), *and Auletta v. Tully,* 576 F.Supp. 191, 195 (N.D.N.Y.1983). The three-year limitations period applies regardless of whether the Plaintiff seeks legal, equitable, or declaratory relief. *See Hartnett v. New York City Transit Auth.,* 200 A.D.2d 27, 612 N.Y.S.2d 613, 616 (App. Div.1994). Levine's arguments to the con-

trary are meritless, and, unsurprisingly, he cites no authority to support them.

### B. *The continuing violation doctrine does not apply to Levine's claims.*

■ To the extent that Levine's briefing suggests that a "continuing violation" exception applies to his claims, he falls short on this citation-free argument as well. The continuing violation doctrine "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research,* 132 F.3d 115, 118 (2d Cir.1997). Under the doctrine, "each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with its occurrence," *id.* at 119 (quotation omitted), but the plaintiff may recover for injuries sustained before the limitations period as well. *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir. 1978). However, the doctrine cannot be applied "merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999).

The continuing violation doctrine is heavily disfavored in the Second Circuit. *See Falinski v. Kuntz,* 38 F.Supp.2d 250, 257 (S.D.N.Y.1999) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.' ") (internal citation omitted). In employment discrimination cases, the Supreme Court has stated that "discrete discriminatory acts" are not covered by the continuing violation doctrine, and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Refusals to hire are considered discrete acts, *id.* at 114, 122 S.Ct. 2061, and the continuing violation doctrine is generally inapplicable in discriminatory hiring cases. *See Purdy v. Town of Greenburgh,* 166 F.Supp.2d 850, 863 (S.D.N.Y.2001); and *Wilkins v. New York City Dep't of Prob.,* 2001 WL 262601 (S.D.N.Y.2001) (internal citations omitted). The rationale behind the "discrete act" rule is that when a plaintiff is harmed by a discrete act or event, he should be aware of it; "[t]o permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980).

Under this precedent and reasoning, the circumstances of the present case do not support application of the continuing violation doctrine. First, although Levine has alleged unconstitutional acts by the Defendants, and an unconstitutional statutory scheme in general, nowhere does he allege that he was the victim of an ongoing "policy" or "practice." More importantly, Levine had ample notice and opportunity to bring a timely claim following the first denial of his application to be a judicial hearing officer—a denial that, based on everything that Levine has alleged in this case, he must have suspected was discriminatory or retaliatory even at the time that it occurred. In sum, there is no reason to invoke the continuing violation doctrine to save Levine's claims arising out of that first application.

C. *Levine's complaint adequately alleges that constitutional violations occurred within the applicable three-year period.*

As previously mentioned, Levine re-applied for a judicial hearing officer position in June 2001, and received notice

that his application was denied in December 2001—both dates well within the three-year statute of limitations that has already been determined to apply here. According to the Defendants, Levine's complaint "alleges only that [his second rejection] violated Part 122 of the Rules of the Chief Administrator, which provides for [an] interview; plaintiff does not assert that it violated any constitutional right or federal law." Therefore, argue the Defendants, Levine's complaint does not allege any constitutional violations whatsoever within the statutory limitations period, and should be dismissed in its entirety. This argument must fail, however, in light of the rule that complaints, particularly complaints alleging civil rights violations, must be read liberally at the dismissal stage, with all reasonable inferences drawn in favor of the plaintiff. *See* Part III, *supra.*

Levine mentions his second rejected application in the context of his first cause of action, which seeks to declare New York's judicial hearing officer appointment scheme unconstitutional. And Levine's exact words are that, when it addressed his second application, "[t]he Judicial Hearing Officer Selection Advisory Committee for Queens County failed *to even* provide Plaintiff Levine with an interview or hearing." [Emphasis added.] The words "to even" strongly suggest an incorporation of Levine's prior arguments as to the unconstitutionality of the law, both generally, and as it was applied to him. Viewed under the Rule 12(b)(6) standard, and with a healthy dose of common sense, Levine's complaint can only fairly be read as claiming that the Defendants' rejection of his second application to be a judicial hearing officer was at least as unconstitutional as their rejection of Levine's first such application. Accordingly, Levine's complaint is not time-barred insofar as it alleges that

the rejection of his December 2001 application was unconstitutional.

### D. *The untimely acts alleged by Levine will be considered as evidence supporting his timely claims.*

■ A statute of limitations does not generally bar the introduction of evidence that predates the commencement of the limitations period but is relevant to events during that period. *Fitzgerald v. Henderson,* 251 F.3d 345, 365 (2d Cir. 2001). Thus, in the employment discrimination realm, where untimely discrete acts of discrimination are alleged in conjunction with timely discrete acts of discrimination, the plaintiff may generally introduce the otherwise time-barred acts as evidence in support of his timely claims. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Therefore, although many of the purportedly unlawful acts of discrimination alleged by Levine fall outside of the statutory limitations period, they provide relevant background information, and will be given evidentiary weight in considering the validity of Levine's timely claims.

### V. *Levine Has Failed to State a Cognizable "Privileges and Immunities," Due Process, or Equal Protection Claim.*

Levine argues that New York's statutory scheme violates the due process, equal protection, and "privileges and immunities" provisions of the U.S. Constitution. This argument fails on every count.

### A. *Any constitutional claims regarding New York's mandatory judicial retirement law are time-barred, and will not be considered.*

■ As an initial matter, Levine's complaint and briefings seem to conflate two different laws: New York's constitutional provision that mandates that a judge must retire at the end of the calendar year in which he turns seventy years old, and the statutory and regulatory system by which former or retired judges may be appointed as judicial hearing officers.

To the extent that Levine is seeking to overturn the constitutional retirement provision in this action, he cannot. Section 1983's limitation period applies to "facial" or "as enacted" constitutional challenges to state law, just as it does to other civil rights claims. *See Hacienda Valley Mobile Estates v. City of Morgan Hill,* 353 F.3d 651, 654–55 (9th Cir.2003); *see also Gilbert v. City of Cambridge,* 745 F.Supp. 42, 47–49 (D.Mass.1990) (rejecting argument that claims seeking declaratory judgments and challenging constitutionality of laws are not subject to statutory limitations periods). Because more than three years have elapsed since Levine was forced to retire under New York's constitutional provision on December 31, 1999, he can no longer challenge the constitutionality of that provision. Levine's complaint will instead be read as challenging only the statutory and regulatory scheme for appointing judicial hearing officers.

### B. *Levine Cannot Assert a Due Process Claim.*

Levine's complaint states that the statutory scheme for appointment of judicial hearing officers violates his due process rights.[2] The Due Process Clause imposes

---

**2.** Levine does not specify whether New York's statutory scheme offends substantive due process or procedural due process. However, his claims and supporting submissions clearly sound in the latter, and will be analyzed as such. Even had Levine adequately raised and argued a substantive due process claim, it seems highly dubious that he would be capable of demonstrating the "fundamental liberty interest" or "conscience-shocking" governmental behavior required to support such a claim. *See County of Sacramento v. Lewis,* 523 U.S. 833, 846–50, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), *and Chavez v. Martinez,* 538 U.S. 760, 775–76, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003).

procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Thus, to prevail on a procedural due process claim under the Fifth and Fourteenth Amendments, a plaintiff must necessarily demonstrate that he was deprived of a protected property or liberty interest. *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995). Levine claims that he was deprived of both types of interest, but can demonstrate neither.

1. *Levine had no property interest in a future judicial hearing officer position.*

■ Levine insists that he had a property right to continue serving as a judge. The Defendants are equally insistent that he had none. Levine is clearly mistaken.

"Although the Constitution protects property interests, it does not create them." *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 629 (2d Cir.1996), *cert. denied,* 519 U.S. 1150, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). Rather, property interests are created and defined by rules or understandings in sources such as state law, which "secure certain benefits and that support claims of entitlement to those benefits." *Id.* (internal quotation omitted). The Supreme Court has explained that property rights "protect those claims upon which people rely in their daily lives." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, to have a property or liberty interest protected by due process, a plaintiff must have more than a "unilateral expectation" of some future benefit; he must have a "legitimate claim of entitlement" to that benefit. *Id.*

In the employment realm, there is generally no property interest in the mere expectation of future employment. *See Roitman v. New York City Transit Auth.,* 704 F.Supp. 346, 349 (E.D.N.Y.1989). An applicant's prior years of service or employment in different positions do not "carry over" to create a legitimate expectation to some other related position. *See Donato v. Plainview–Old Bethpage Centr. Sch. Dist.,* 96 F.3d 623, 629 (2d Cir.1996). And where, as here, the obtainment of an employment position hinges on others' discretion, the applicant has no legitimate claim of entitlement to that position, *see Donato,* 96 F.3d at 629, unless the discretion is so restricted as to "virtually assure conferral of the benefit." *See Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996). In a similar case dealing with the appointment of New York City Family Court judges, the Second Circuit stated that "the fact that many, or even most, incumbent judges have been reappointed cannot operate to raise [the plaintiff's] 'subjective expectation' to a constitutionally protected right, especially when doing so would contradict the relevant statutes and rules." *Schwartz v. Mayor's Committee on the Judiciary of the City of New York,* 816 F.2d 54, 57 (2d Cir.1987).

In this case, New York's scheme for appointing judicial hearing officers clearly and unmistakably gives the chief administrator of the courts extensive discretion to both confer with others on each judicial hearing officer applicant's qualifications, and to make the ultimate determination as to which applicants should be selected for the position. And the relevant rules and regulations concerning the appointment scheme specifically and explicitly state that "[n]othing herein shall vest any person with any right to be designated as a judicial hearing officer." 22 NYCRR § 122.7. In sum, Levine's assertion that he had a constitutionally protected property right to

be selected as a judicial hearing officer is baseless.

### 2. *Levine had no liberty interest in a future judicial hearing officer position.*

■ Levine argues without elaboration that "[l]iberty interests are also involved" in this case. As an initial matter, it is highly doubtful that this single-sentence assertion, unsupported by any legal authority, suffices to adequately raise the issue of Levine's liberty interest in a judicial hearing officer appointment. Even assuming that it does, this argument is without merit.

"A governmental employee's constitutionally protected liberty interest is implicated when the government, in terminating the employee, imposes upon the employee a stigma which restricts his or her ability to obtain future employment." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999). In such liberty interest-in-employment claims, the plaintiff must demonstrate some allegedly stigmatizing allegations that were, or are likely to be, disclosed. *Id.* at 280–81. As this language suggests, liberty interests in future employment are generally implicated by terminations, not refusals to hire. Levine offers no precedent, and none was found, for his implicit contention that the mere refusal to hire him amounted to a stigmatizing restriction on his ability to obtain other employment. New York precedent specifically counsels otherwise. *See Matter of Marro v. Bartlett*, 46 N.Y.2d 674, 416 N.Y.S.2d 212, 389 N.E.2d 808, 813 (1979) (finding "no substance to the assertion that 'stigma' attaches to the denial of certification [as a judicial hearing officer], at least in the absence of any public disclosure of the

reasons therefor.").[3] And Levine's complaint is entirely barren of any suggest that the Defendants have somehow otherwise stigmatized him, or that they are likely to do so in the future. Accordingly, Levine has failed to state a cognizable claim that he was deprived of a liberty interest without procedural due process.

### C. *Levine has not stated a cognizable federal claim for the deprivation of his "privileges and immunities."*

■ Levine's complaint also argues that the New York scheme for appointment of judicial hearing officers, or its application to him, deprived him of "rights, privileges, and immunities secured by the Constitution and laws of the United States and New York State." Even assuming that Levine actually had, as he suggests, some privilege to employment as a judicial hearing officer, any claim for the deprivation of this privilege is not cognizable under federal law.

The Fourteenth Amendment states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." In the *Slaughter–House Cases,* 16 Wall. 36, 83 U.S. 36, 21 L.Ed. 394 (1872), the Supreme Court noted: "It is a little remarkable, if this clause was intended as a protection to the citizen of a State against the legislative power of his own State, that the word citizen of the State should be left out." *Id.* at 74, 16 Wall. 36. Accordingly, the Supreme Court held that only the enumerated privileges and immunities of federal citizenship, not state citizenship, are protected by this portion of the Fourteenth Amendment. *Id.* at 75, 16 Wall. 36. Those federal privileges and immunities are: (1) the right to pass freely from state

---

**3.** As explained in Part V.D.1, *infra,* although the New York Court of Appeals' logic and determinations are not binding upon this Court, they are highly persuasive in regard to questions of New York law.

to state; (2) the right to petition Congress for redress of grievances; (3) the right to vote for national officers; (4) the right to be protected against violence while in the lawful custody of a U.S. Marshall; (5) the right to enter public lands; (6) the right to inform U.S. officers of violations of its laws; (7) the right to carry on interstate commerce; (8) the statutory right to take and hold real property. *See* LAWRENCE TRIBE, AMERICAN CONSTITUTIONAL LAW § 7-4, at 423 (1978).

As previously noted (in Part V.B.1, *supra* ), property rights are generally created by state law, not the federal Constitution. Property rights have thus not been protected under the "privileges and immunities" clause of the latter; since the *Slaughter–House Cases,* constitutional employment claims have been brought pursuant to other provisions of the Fourteenth Amendment (some already discussed above), but not the "privileges and immunities" clause. *Cf. Prudential Ins. Co. of Am. v. Cheek,* 259 U.S. 530, 539, 42 S.Ct. 516, 66 L.Ed. 1044 (1922). Levine offers no reason, nor is any apparent, for contravening well over a century of Supreme Court precedent.

D. *Levine Has Failed to State an Equal Protection Claim.*

The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) (quoting *Harris v. McRae,* 448 U.S. 297, 322 (1980)). That is, the government may not "draw distinctions between indi-

viduals based solely on differences that are irrelevant to a legitimate governmental objective," or "subject men and women to disparate treatment when there is no substantial relation between the disparity and an important state purpose." *Lehr v. Robertson,* 463 U.S. 248, 265–66, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). There are two main types of equal protection challenges: to laws that disparately affect classes of persons, and to the disparate enforcement of laws against individuals. Levine falls short of stating either type.

1. *New York's scheme for appointing judicial hearing officers, as enacted, does not violate the Constitution's Equal Protection guarantees.*

▆ In traditional equal protection claims, the plaintiff challenges a law that results in the disparate treatment of a class of persons of whom the plaintiff is a member, or a law explicitly treating that class differently.[4] Legislation that "disadvantages a 'suspect' class" or "impinges on the exercise of a fundamental personal right," will be strictly scrutinized to determine whether it is "precisely tailored to serve a compelling governmental interest." *Eisenbud v. Suffolk County,* 841 F.2d 42, 45 (2d Cir.1988) (internal quotations and citations omitted). "[S]ocial and economic legislation that does not discriminate on the basis of inherently suspect classifications or implicate 'fundamental' personal rights does not violate equal protection rights if it has any rational relationship to a legitimate governmental purpose." *Id.*

---

4. Levine does not actually specify what "class" is burdened by the judicial hearing officer appointment scheme. Read in conjunction with his arguments that the New York constitution's mandatory judicial retirement provision is unconstitutional, it may be presumed that Levine is arguing that the aged or disabled are burdened; alternatively, he may be simply proposing a class that consists of forcibly retired former state judges who apply to be judicial hearing officers. Either way, the New York scheme passes constitutional muster, as explained *infra.*

As an initial matter, the basis of Levine's "as enacted" challenge to the judicial hearing officer appointment scheme is not clear from his submissions. To the extent that Levine is arguing that New York's system should be subject to strict scrutiny, his argument must fail. As already explained in Part V.B, the system does impinge on any property or liberty interests, and Levine's submissions do not suggest any other fundamental personal right implicated by the scheme. Additionally, to the extent that Levine suggests that the law must be strictly scrutinized because it discriminates based on age or disability, he is mistaken. Age is not a suspect classification under the Equal Protection Clause. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Persons with physical or mental disabilities are not a suspect class. *See Story v. Green*, 978 F.2d 60, 64 (2d Cir. 1992). And government employees subjected to a mandatory retirement age are not a suspect class. *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). No other suspect classification can be inferred from Levine's submissions.

■ Since no suspect classification or fundamental interest is implicated by New York's scheme, the next question is whether it is rationally related to furthering a legitimate governmental objective. It is self-evident, and undisputed by Levine, that the selection of qualified individuals to serve as judicial hearing officers is a legitimate governmental objective. The key question is whether the New York system for selecting qualified individuals is rationally related to the legitimate objective of having such qualified individuals serve. Levine argues, in essence, that there is no adequately rational relationship. Specifi-

cally, Levine seems to suggest that the discretion that the rules place in the hands of the chief administrative judge and his assistants to select judicial hearing officers without offering any public justification for their decision, bears no rational relation to the state's objective of appointing qualified officers.

The review of legislation for some rational basis is "highly deferential," does not pass judgment upon the "wisdom, fairness, or logic" of legislative decisions, and mandates upholding statutes if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Dittmer v. County of Suffolk*, 188 F.Supp.2d 286, 292 (E.D.N.Y. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir.2001) (internal citations omitted)).

The New York Court of Appeals has previously stated that the judicial appointment scheme "makes eminent theoretical and practical common sense." *Matter of Marro v. Bartlett*, 46 N.Y.2d 674, 416 N.Y.S.2d 212, 389 N.E.2d 808, 812 (1979). As the Court of Appeals explained, the "determination whether the services of any individual former Judge are necessary to meet a need for additional judicial manpower must always involve the weighing what must be personal if not private considerations." *Id.* at 812–13. "It would serve no sufficiently useful purpose ... to expose to public scrutiny the potentially sensitive and delicate personnel considerations which must be evaluated and resolved." *Id.* at 813. "Indeed," noted the Court, "many of the same considerations of policy and practice which shelter the procedures preliminary to higher executive personnel appointments, e.g., by the Governor, from public view and judicial scrutiny support the present method for certifi-

cation of former Judges for further judicial service." *Id.*

Levine concedes that prior decisions by the New York Court of Appeals and Appellate Division have upheld the federal constitutionality of New York's mandatory judicial retirement rule (which, again, is not considered here—see Part V.A, *supra*), and New York's scheme of appointing judicial hearing officers. But Levine "respectfully disagrees" with the state courts' conclusions. A federal court should not give effect to state statutes that violate the federal Constitution, and is not bound by state court applications of federal constitutional principles to state law. *Indus. Consultants, Inc. v. H.S. Equities, Inc.,* 646 F.2d 746, 749 (2d Cir.1981). But state court determinations are generally considered persuasive authority, and are entitled to great respect, particularly where they depend "in large part" upon the state court's "intimate knowledge of the operation" of the state statute at issue. *Id.* The persuasive reasoning of the New York Court of Appeals, considered in light of the highly deferential "rational basis" standard appropriate in this case, is sufficient to defeat any challenge to the constitutionality of the New York scheme, as enacted.

2. *Levine has failed to state a "selective enforcement" or "class of one" equal protection claim.*

▮ Where a plaintiff alleges that the application of a facially valid law or regulation violates equal protection in its application to him as an individual, he must generally state a claim sounding in "selective enforcement," or discrimination against a "class of one." Under either form of equal protection claim, the plaintiff must allege that the defendants intentionally treated him differently than other similarly-situat-

ed individuals. *See Payne v. Huntington Union Free Sch. Dist.,* 219 F.Supp.2d 273, 278 (E.D.N.Y.2002). Whether a plaintiff and others are similarly situated is generally a factual issue, resolved by an objective examination of whether "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Equus Assocs., Ltd. v. Town of Southampton,* 37 F.Supp.2d 582, 598 (E.D.N.Y.1999) (quoting *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 19 (1st Cir.1989)). In the present case, Levine's individualized equal protection claim fails because he does not point to any other individual similarly situated to him, but more favorably treated by the defendants.

3. *Levine's retaliation claim is not cognizable under equal protection.*

▮ Levine's complaint and memorandum opposing dismissal stress that he has been the victim of political retaliation at the hands of the Defendants. However, the Second Circuit has strongly intimated that equal protection is an improper vehicle for employment-related retaliation claims; such claims are more appropriately brought under the rubric of Title VII or the First Amendment. *See Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) (citing *Ratliff v. DeKalb County,* 62 F.3d 338, 340–41 (11th Cir.1995) (no clearly recognized right to be free from retaliation exists under equal protection clause); *and Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989) (claims for retaliation must be brought under Title VII, not equal protection clause), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990)). A plaintiff cannot restyle a Section 1983 claim for retaliation as a violation of his Equal Protection rights under the Fourteenth Amendment. *Knight v. City of*

*New York*, 303 F.Supp.2d 485, 501 (S.D.N.Y.2004). Levine has failed to adequately plead or argue either a First Amendment or a Title VII retaliation cause of action, and his retaliation claims will not be analyzed under the equal protection clause.

### VI. *Conclusion: Dismissal of Levine's Entire Case Is Appropriate; Levine May Move to Amend His Complaint.*

Because Levine's pleadings fail to state a timely and viable federal cause of action, and because this Court declines to exercise supplemental jurisdiction over any potential remaining state law claims that Levine purports to plead,[5] dismissal of Levine's entire case is appropriate.

Levine has indicated that he seeks to amend his complaint. Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint, even following dismissal, is generally "freely given." Accordingly, Levine may move to amend his complaint, so long as his proposed amendments are not "futile." *See John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994); *and* 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.10 (2d ed.1989).

If Levine desires to move to amend his complaint, he must submit a letter to the Court stating so (with copies served upon all other parties' counsel), on or before March 31, 2005. If Levine fails to submit

---

5. Levine's complaint seeks, without elaboration, a declaration that "he has been deprived of rights, privileges and immunities secured by the Constitution and laws of the United States and New York State." The decision whether to exercise supplemental jurisdiction is left to the discretion of the district court. *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir.1998). Under 28

and serve such a letter by that date, this case will be terminated with prejudice.

**SO ORDERED.**

---

U.S.C. § 1367(c), a district courts may decline to exercise supplemental jurisdiction over a state law claim when the district court has dismissed all of the federal claims over which it has original jurisdiction. Thus in this case, even assuming that Levine has sufficiently stated any cognizable state law claims (a very generous assumption), supplemental jurisdiction over such claims is hereby declined.